18                                    361 Mass. 18

Black & Decker Manufacturing Co. *v*. Ann & Hope, Inc. of Danvers.


THE BLACK AND DECKER MANUFACTURING COMPANY *vs.*
ANN & HOPE, INC. of Danvers.

Suffolk.   September 16, 1971. — January 14, 1972.

Present: TAURO, C. J., CUTTER, REARDON, & QUIRICO, JJ.

*Fair Trade Law.   Unfair Competition.*

A fair trade contract between a manufacturer and retailers which
did not fix specific invariable retailers' prices in accordance with
G. L. c. 93, § 14A, but allowed retailers at their option to vary by
as much as three percent the prices set by the contract, was not
enforceable by the manufacturer under § 14B against a retailer
who was not a party to the contract. [22]

BILL IN EQUITY filed in the Superior Court on August
25, 1970.

A demurrer to the bill was heard by *Goldberg, J.*

*H. Erik Lund* (*Martin B. Shulkin* with him) for the
plaintiff.

*Barry Ravech* for the defendant.

QUIRICO, J.   This is a bill in equity brought under
the provisions of G. L. c. 93, §§ 14A–14D (Fair Trade
Law), seeking relief in the form of an injunction and
money damages by reason of the defendant's alleged
unfair competition.   The defendant's demurrer to the
bill was sustained.   Although the plaintiff was not de-
nied leave to amend its bill, it did not move to do so and
the bill was dismissed.   Rule 23 of the Superior Court
(1954).   The case is before us on the plaintiff's appeals
from the interlocutory decree sustaining the demurrer
and from the final decree dismissing the bill.

The bill alleges in substance that the plaintiff manu-
factures and sells power tools which are identified by
a brand name and trade mark owned exclusively by it
and which are distributed throughout Massachusetts
and elsewhere; that its products are of standard quality

361 Mass. 18                                                            19

Black & Decker Manufacturing Co. *v*. Ann & Hope, Inc. of Danvers.

and compete freely and openly in the Commonwealth and elsewhere with similar products produced and sold by others; that pursuant to the Fair Trade Law it has entered into "fair trade contracts, all in the same form, with Massachusetts retailers . . . wherein the said retailers have agreed that they will not advertise, offer for sale or sell products of the plaintiff listed in a schedule attached to such agreement bearing the plaintiff's trademark, brand or name at less than the prices set forth in the said schedule"; that the defendant, knowing of the plaintiff's fair trade contracts with other retailers and having been notified by the plaintiff of the existence of such contracts and of the prices stipulated thereunder, "thereafter willfully and knowingly advertised, offered for sale and sold, at retail, plaintiff's products at prices below the minimum retail resale prices contained in said . . . contracts." The bill further alleges that the defendant's conduct was not justified under any of the exceptions contained in § 14A of the Fair Trade Law, and that, as a result, it constituted unfair competition in violation of § 14B of the law.[1] The bill does not allege that the defendant ever signed a fair trade contract with the plaintiff.

Attached to and incorporated in the plaintiff's bill is a copy of its standard fair trade contract and a "Fair Trade Retail Price List" in effect at all dates material to this case. Each of the price lists identifies the plaintiff's products by catalogue number and description, and for each product it gives a price in a column entitled "Minimum Retail." Each price list included the following pertinent language: "The products listed above shall . . . [not] be sold . . . by Retailers at less than said fair trade retail price. . . . Unless otherwise pro-

---

[1] Section 14B, as amended by St. 1939, c. 313, provides in pertinent part: "Wilfully and knowingly advertising, offering for sale or selling any commodity at less than the price stipulated in any contract entered into pursuant to the preceding section, whether the person so advertising, offering for sale or selling is or is not a party to such contract, is hereby declared to constitute unfair competition and to be actionable at the suit of any person damaged thereby."

hibited by law, a bona fide cash discount may be given by a Retailer in an amount not exceeding three per cent (3%) of the minimum retail selling price only under the following terms and conditions: 1. The discount must be in the form of cash, trading stamps, coupons, cash register receipts or analogous form. 2. The discount must be given as a matter of the Retailer's general policy and not on Black and Decker products alone. 3. Black and Decker products must continue to be advertised and offered for sale at the minimum retail price as set out in this Schedule . . . . 4. The discount shall not be given solely for the purpose of selling trademarked Black and Decker products below the established minimum retail price."

The defendant's demurrer to the bill as a whole was sustained on the fourth ground stated therein to the effect that "[t]he plaintiff has not set forth an equitable claim for relief because it has, by its Fair Trade Agreements, permitted its retailers to discount its products, while at the same time requiring them to advertise said products at the higher non-discount price." For the purpose of determining the sufficiency of the bill on demurrer, the allegations therein and the several exhibits attached to and incorporated in the bill must be taken as true. *Fred C. McClean Heating Supplies, Inc.* v. *Westfield Trade High Sch. Bldg. Comm. of Westfield*, 345 Mass. 267, 269.

The Fair Trade Law, first enacted in 1937, appears by its terms to have had two objectives. One was to eliminate any question about the validity of price fixing contracts between the producer, distributor or vendor of certain commodities bearing the trade mark, brand or name of the producer or owner, and the purchaser, who is usually a retailer. G. L. c. 93, § 14A. These contracts generally relate to the price at which the retailer is required to resell the commodity. The other objective was to permit the enforcement of such price fixing contracts not only against the immediate parties thereto but against any person "[w]ilfully and knowingly advertis-

ing, offering for sale or selling any commodity at less than the price stipulated in any contract . . . [fixing such price] *whether the person so advertising, offering for sale or selling is or is not a party to such contract"* (emphasis supplied). G. L. c. 93, § 14B, as amended. This represented a radical departure from the common law which permitted the enforcement of such contracts against the parties thereto (*Garst* v. *Harris*, 177 Mass. 72, and *Garst* v. *Charles*, 187 Mass. 144), but not against persons who were not parties thereto. *Garst* v. *Hall & Lyon Co.* 179 Mass. 588, 590–591. Because the Fair Trade Law represents such a departure as to nonsigners, and because it creates an exception to the general public policy of protecting the consuming public by prohibiting monopolies and requiring free and open price competition in the sale of commodities which are neither harmful nor critical in supply, it will be strictly interpreted and narrowly circumscribed.

The Fair Trade Law appears to have evolved from a number of bills filed in the Legislature in 1937 for the purpose of taking advantage of the then recently enacted Miller-Tydings Act, amending § 1 of the Sherman Antitrust Act, 50 Stat. 693–694, 15 U. S. C. § 1 (1970). Some of the bills would have permitted contracts requiring that commodities would not be resold "at less than the minimum price stipulated by the vendor." 1937 Senate Doc. No. 122. 1937 House Doc. Nos. 548, 975. Others would have permitted contracts requiring that commodities be sold "at the price stipulated by the vendor." 1937 Senate Doc. No. 296. 1937 House Doc. Nos. 397, 549. Ultimately the Legislature enacted G. L. c. 93, §§ 14A–14D, and in so doing elected to validate and permit enforcement of contracts providing "[t]hat the buyer will not resell such commodity except at *the price stipulated* by the vendor" (emphasis supplied). (§ 14A [1]) We conclude from this that the Legislature intended to authorize the fixing by contract of a specific fair trade price, not a variable price, and not a maximum nor a minimum price.

The plaintiff argues that the Fair Trade Law should be construed to require only that the price fixing agreement specify a minimum price, and not a specific invariable price. In support of this argument it cites *General Elec. Co.* v. *Kimball Jewelers, Inc.* 333 Mass. 665, 675, *Colgate-Palmolive Co.* v. *Elm Farm Foods Co.* 337 Mass. 221, 222, and *Shulton, Inc.* v. *Consumer Value Stores, Inc.* 352 Mass. 605, 608–609. The question with which we are faced was not raised in these cases. It is before us for the first time. We do not agree with the interpretation urged on us by the plaintiff. We hold that because the plaintiff's fair trade contracts with persons other than the defendant do not fix a specific invariable price for the commodities which it sells, it is not entitled to enforce such contracts and prices against the defendant who is not a party thereto. The benefits of the enforcement provisions of G. L. c. 93, § 14B, as to nonsigners of fair trade contracts, are available only on contracts complying with the strict requirement of § 14A for a fixed and invariable resale price. The plaintiff's contract does not comply because it authorizes each retailer, at his sole option, to vary, by as much as three per cent, the price of any article covered by the plaintiff's fair price lists.

We recognize that other courts have interpreted statutes substantially similar to ours as requiring only the fixing of minimum prices and not absolute and invariable prices. See e.g., *Shulton, Inc.* v. *Hogue & Knott, Inc.* 364 F. 2d 765 (6th Cir.) ; *Pepsodent Co.* v. *Krauss Co. Ltd.* 200 La. 959; *Mead Johnson & Co.* v. *Chester Discount Health & Vitamin Center*, 411 Pa. 377. For reasons already stated, we do not follow these decisions. Several other decisions cited by the plaintiff as supporting its argument are distinguishable because they are based on the premise or prior holdings that cash discounts or their equivalent in trading stamps do not contravene fair trade laws. See *Shulton, Inc.* v. *Hogue & Knott, Inc., supra;* *Jantzen, Inc.* v. *E. J. Korvette, Inc.* 219 F. Supp. 604 (S. D. N. Y.) ; *Corning Glass Works* v. *Max Dichter Co. Inc.* 102 N. H. 505, 513; *Shulton, Inc.* v. *Apex, Inc.* 103

R. I. 131.   We have held otherwise in *Colgate-Palmolive Co.* v. *Elm Farm Foods Co.* 337 Mass. 221.

What we have said is sufficient to dispose of the case in favor of the defendant.   It is therefore unnecessary for us to consider the interesting additional ground on which the demurrer was sustained, viz. that the plaintiff's contract provision permitting its vendees to sell at a discount but requiring them to advertise only the full price without the discount "is a patent violation of . . . G. L. c. 93A, § 2 which prohibits unfair or deceptive trade practices, and the Federal Trade Commission Act (15 U. S. C. § 45 (a) (1)."

Although the constitutionality of our Fair Trade Law as applied to noncontracting third parties has not been placed in issue in this case, it may not be inappropriate to comment thereon.   The law was initially held constitutional by us in this respect in 1956 in *General Elec. Co.* v. *Kimball Jewelers, Inc.* 333 Mass. 665, 677, where we observed: "Where the question has been presented it has been decided in the great majority of cases that State fair trade statutes are valid and not contrary to the State or Federal Constitution," citing numerous cases.   However, only eleven years later, in our decision in *Shulton, Inc.* v. *Consumer Value Stores, Inc.* 352 Mass. 605, 607, we observed: "Massachusetts is one of the minority jurisdictions which hold the Fair Trade Law to be valid." Indeed, at this point in time one source reports that out of the forty States which presently have such legislation, twenty-three have declared their acts unconstitutional as applied to noncontracting third parties, fifteen have declared theirs to be constitutional in this respect and two have not ruled on the question.[2]   Beyond this review of the trend of the decisions, we intimate no opinion on this question at this time.

The interlocutory decree sustaining the demurrer is affirmed.   The final decree dismissing the bill is affirmed, with costs of appeal to the defendant.

*So ordered.*

[2] C. C. H. Trade Regulation Reporter, par. 6,041 (June 8, 1970).