CORNING GLASS WORKS *vs.* ANN & HOPE, INC.
OF DANVERS
(and a companion case[1]).

Suffolk.   January 3, 1973. — April 2, 1973.

Present: TAURO, C.J., QUIRICO, BRAUCHER, HENNESSEY, & WILKINS, JJ.

*Fair Trade Law.   Constitutional Law,* Delegation of powers, Due process of law, Equal protection of laws, Police power, Fair trade law.

Review of history of "fair trade." [412–415]
The nonsigner provision of G. L. c. 93, § 14B, does not violate the due process clause or the equal protection clause of the Fourteenth Amendment to the Federal Constitution. [415–416]
The nonsigner provision of G. L. c. 93, § 14B, is not an unreasonable exercise of the State's police power in violation of Part II, c. 1, § 1, art. 4, of the Massachusetts Constitution as limited by arts. 1, 7, 10, and 12 of its Declaration of Rights. [416–420]
The nonsigner provision of G. L. c. 93, § 14B, amounts to an unconstitutional delegation of legislative power to private parties, and to that extent *General Electric Co.* v. *Kimball Jewelers, Inc.* 333 Mass. 665, is overruled. [420–424]

BILL IN EQUITY filed in the Superior Court on February 15, 1972.

The suit was reserved and reported by *Paquet,* J.

*Erik Lund* (*Robert T. Harrington* with him) for Corning Glass Works.

*Manuel Katz* for L C A Corporation, S. W. Farber Division.

---

[1] L C A Corporation, S. W. Farber Division *vs.* Ann & Hope, Inc. of Danvers.   It is stipulated that "because the record in this case is substantially the same as in" the Corning case, "and raises the very same issues, there is no need to print the record in this case and the printed record" in the Corning case "may serve as the printed record in this case."

*Barry Ravech* (*George S. Abrams* with him) for Ann & Hope, Inc. of Danvers.

*Gordon T. Roberts* for New England Hardware Dealers Association, amicus curiae, submitted a brief.

*Donald B. Gould & Paul D. Weaver*, for A. T. Cross Company, amicus curiae, submitted a brief.

BRAUCHER, J. The plaintiff (Corning) brought suit under the so called Fair Trade Law, G. L. c. 93, §§ 14A–14D, to enjoin the defendant (Ann & Hope) from advertising, offering for sale or selling Corning products at prices less than the "fair trade" prices stipulated by Corning in its "fair trade" contracts with Massachusetts retailers. Ann & Hope, which had never made such a contract, filed a plea in bar asserting that the so called nonsigner provision of the statute, G. L. c. 93, § 14B, is unconstitutional.

The statute was held constitutional in 1956 in *General Elec. Co.* v. *Kimball Jewelers, Inc.* 333 Mass. 665, 677, where we observed, citing numerous cases: "Where the question has been presented it has been decided in the great majority of cases that State fair trade statutes are valid and not contrary to the State or Federal Constitution." In 1972, however, in *Black & Decker Mfg. Co.* v. *Ann & Hope, Inc. of Danvers*, 361 Mass. 18, 23, we observed that "one source reports that out of the forty States which presently have such legislation, twenty-three have declared their acts unconstitutional as applied to noncontracting third parties, fifteen have declared theirs to be constitutional in this respect and two have not ruled on the question."

The trial judge was of the opinion that the question of law presented by the defendant's plea in bar so affected the merits of the controversy that it ought to be determined by this court before further proceedings. Accordingly, he reserved and reported the case upon the bill, the plea in bar and a statement of agreed facts. Briefs have been filed by A. T. Cross Company and by the New

England Hardware Dealers Association as friends of the court.

We reconsider the *General Electric* case and overrule it in part as indicated later in this opinion.

We summarize the statement of agreed facts. Corning, a New York corporation, produces and sells specialty glassware under various trade marks, brands and names. These products are of standard quality and are in free, fair and open competition with products of the same general class produced and sold by others. Corning has a valuable good will in its products, trade marks, brands and names, and has expended great sums in advertising and promoting them. It has entered into contracts, pursuant to G. L. c. 93, §§ 14A–14D, all in the same form, whereby Massachusetts retailers of its products have agreed that they will not, except as specifically permitted by statute, advertise, offer or sell certain Corning products at prices other than the "fair trade" prices set by Corning.

Ann & Hope sells merchandise at retail in Danvers, including Corning products. Ann & Hope has never made a "fair trade" contract with Corning, but has been aware of Corning's system of distribution and Corning's fixing of retail prices. Despite written notice from Corning of Corning's contracts and prices, Ann & Hope offered and sold Corning products at prices below the "fair trade" retail prices fixed by Corning.

There is no claim that Ann & Hope incurred any liability under the so called Unfair Sales Act, G. L. c. 93, §§ 14E–14K. Ann & Hope's conduct was not justified under any of the exceptions in G. L. c. 93, § 14A, covering closeout sales, damaged or deteriorated goods, and sales under court order. Ann & Hope owned all of the products sold by it, and has had no direct contractual relations with Corning with respect to those products. Ann & Hope's acts violated G. L. c. 93, § 14B. After those acts other retailers in the Commonwealth acted similarly, and retail dealers seeking to continue to abide by

the Corning contracts complain that they cannot compete in price with Ann & Hope. Corning is a "person damaged" under G. L. c. 93, § 14B. It waives its claim for damages and asks only for injunctive relief. If the plea in bar is overruled, the parties agree that a permanent injunction may be entered against Ann & Hope.

1. *The history of "fair trade."* Apart from statute, this court in 1900 upheld and enforced a contract between the seller of a proprietary medicine and a buyer-retailer by which the retailer agreed not to resell below a stipulated price. *Garst* v. *Harris,* 177 Mass. 72. In 1901 this court refused to enforce such a contract against a retailer who was not a party to it, even though he bought the product with full knowledge of the proprietor's system of distribution. *Garst* v. *Hall & Lyon Co.* 179 Mass. 588. In 1905, however, such a contract was enforced by injunction against a third-party retailer who had conspired with a contracting retailer to deprive the proprietor of the benefit of the contract. *Garst* v. *Charles,* 187 Mass. 144.

In 1911 a manufacturer of proprietary medicines sought to enforce by injunction against a nonsigner a similar scheme, relying on the doctrine that "an actionable wrong is committed by one who maliciously interferes with a contract between two parties and induces one of them to break that contract to the injury of the other." *Dr. Miles Medical Co.* v. *John D. Park & Sons Co.* 220 U. S. 373, 394. The Supreme Court of the United States, with Mr. Justice Holmes dissenting, held that the restrictions sought to be enforced were invalid both at common law and under the Sherman Antitrust Act of 1890, 26 Stat. 209 (now as amended, 15 U. S. C. § 1 [1970]), declaring illegal every "contract, combination . . . or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations." Compare *Butterick Publishing Co.* v. *Fisher,* 203 Mass. 122; *Associated Perfumers, Inc.* v. *Andelman,* 316 Mass. 176, 184.

The next major development came in the 1930s. See Report of Federal Trade Commn. on Resale Price Main-

tenance pp. XXVI–XXVIII (1945). Beginning with California in 1931, a number of States adopted statutes authorizing resale price maintenance by contracts enforceable against nonsigners with knowledge. In 1936 the Supreme Court of the United States upheld the Illinois and California statutes against constitutional attack made on the grounds that they denied due process of law and equal protection of the laws in violation of the Fourteenth Amendment to the Constitution of the United States. *Old Dearborn Distrib. Co.* v. *Seagram-Distil. Corp.* 299 U. S. 183. *Pep Boys, Manny, Moe & Jack of Cal. Inc.* v. *Pyroil Sales Co. Inc.* 299 U. S. 198. In 1937 the Miller-Tydings Act amended the Sherman act to permit contracts for resale price maintenance with respect to commodities to be resold in a State where such contracts are lawful for intrastate sales. 50 Stat. 693 (as amended, 15 U. S. C. § 1 [1970]). In the same year, the Massachusetts statute was enacted. St. 1937, c. 398, inserting §§ 14A–14D in G. L. c. 93. Eventually forty-six States enacted such laws.[2]

In 1951 the Supreme Court held that the Miller-Tydings amendment validated resale price maintenance only with respect to parties to the contracts and did not permit relief against nonsigners. *Schwegmann Bros.* v. *Calvert Distil. Corp.* 341 U. S. 384. In 1952 the McGuire Act extended the immunity from the antitrust laws granted by the Miller-Tydings amendment so as to permit enforcement of resale price maintenance against nonsigners. 66 Stat. 631, 15 U. S. C. § 45 (a) (3) (1970). *Hudson Distrib. Inc.* v. *Eli Lilly & Co.* 377 U. S. 386, 395.

When the McGuire Act was enacted in 1952, only one State, Florida, had held a "fair trade" law unconstitutional. *Liquor Store, Inc.* v. *Continental Distil. Corp.* 40 So. 2d 371 (Fla.). Such laws had been enacted in every State except Missouri, Texas, and Vermont. When we upheld the constitutionality of the Massachusetts statute in 1956, we cited cases from sixteen States upholding

---

[2] C. C. H. Trade Regulation Reporter, par. 6,041 (August 8, 1972).

such statutes and contrary decisions in four States.  *General Elec. Co.* v. *Kimball Jewelers, Inc.* 333 Mass. 665, 677.  Our subsequent decisions have followed the *General Electric* case.  *E. I. du Pont de Nemours & Co. Inc.* v. *Kaufman & Chernick, Inc.* 337 Mass. 216, 219.  *Colgate-Palmolive Co.* v. *Elm Farm Foods Co.* 221, 225.  *Shulton, Inc.* v. *Consumer Value Stores, Inc.* 352 Mass. 605, 607.  See *Clairol, Inc.* v. *Cody's Cosmetics, Inc.* 353 Mass. 385, 394; *Black & Decker Mfg. Co.* v. *Ann & Hope, Inc. of Danvers,* 361 Mass. 18, 23.

Since 1956 the picture has changed.  We are told that seventeen States now have effective "fair trade" laws including nonsigner provisions.  In the remaining thirty-three States and in the District of Columbia, either there is no such statute or nonsigner provisions are not enforceable.  It is argued that the "fair trade" States with effective nonsigner provisions, including Massachusetts, account for more than half of the total dollar volume of retail sales.  But the force of that argument is weakened by the fact that at least five States which had upheld such statutes have overruled their earlier decisions and held the nonsigner provision unconstitutional.  *Dr. G. H. Tichenor Antiseptic Co.* v. *Schwegmann Bros. Giant Super Mkts.* 231 La. 51.  *General Elec. Co.* v. *Wahle,* 207 Ore. 302.  *Olin Mathieson Chem. Corp.* v. *White Cross Stores, Inc.* 414 Pa. 95.  *House of Seagram, Inc.* v. *Assam Drug Co.* 85 S. D. 27.  *Remington Arms Co. Inc.* v. *Skaggs,* 55 Wash. 2d 1.  The statutes have been repealed in at least three other States where they had been upheld.

We think the developments since 1956 require us to reconsider the *General Electric* decision.  It is one thing to resolve constitutional doubts in favor of a legislative program which has been authorized by the Congress and enacted by all but four States and which has been held constitutional in the great majority of cases.  It is quite another to adhere to such a decision when most of the courts of other States have taken a contrary view, when the Legislative program has been repealed by Legislatures in States where it had been upheld as well as in

States where it had been struck down, and when other courts which had upheld the program have reconsidered the position and abandoned it.

To avoid misunderstanding, we point out that we are considering here only the constitutionality of the nonsigner provision in G. L. c. 93, § 14B. The present record presents no question with respect to the validity of the contracts between Corning and Massachusetts retailers, and no such question has been argued to us.

2. *Federal questions.* The defendant's plea in bar asserts that the nonsigner provision of the statute violates the due process and equal protection clauses of the Fourteenth Amendment. That assertion is flatly contrary to the decision in *Old Dearborn Distrib. Co.* v. *Seagram-Distil. Corp.* 299 U. S. 183. That decision rested in part on the view that the nonsigners' "voluntary acquisition of the property" with knowledge of the restriction "carried with it, upon every principle of fair dealing, assent to the protective restriction" (pp. 193–194). That rationale was undermined in *Schwegmann Bros.* v. *Calvert Distil. Corp.* 341 U. S. 384, 388, where the court said that "to impose price fixing on persons who have not contracted or agreed to the scheme . . . is not price fixing by contract or agreement; that is price fixing by compulsion."

But subsequent decisions of the Supreme Court of the United States, though without rationale, make it clear that such assertions present no substantial Federal question. *Lionel Corp.* v. *Grayson-Robinson Stores, Inc.* 15 N. J. 191, app. dism. for want of a substantial Federal question sub nom. *Grayson-Robinson Stores, Inc.* v. *Lionel Corp.* 348 U. S. 859. *General Elec. Co.* v. *Masters, Inc.* 307 N. Y. 229, app. dism. for want of a substantial Federal question sub nom. *Masters, Inc.* v. *General Elec. Co.* 348 U. S. 892. See *Seagram-Distil. Corp.* v. *New Cut Rate Liquors, Inc.* 221 F. 2d 815, 820 (7th Cir.), cert. den. sub nom. *New Cut Rate Liquors, Inc.* v. *Seagram-Distil. Corp.* 350 U. S. 828; *Standard Drug Co. Inc.* v. *General Elec. Co.* 202 Va. 367, app. dism. for want of a

substantial Federal question, 368 U. S. 4; *Hudson Distrib. Inc.* v. *Eli Lilly & Co.* 377 U. S. 386, 395. We are bound by decisions of the Supreme Court on Federal questions, regardless of rationale or lack thereof.

3. *The police power.* The defendant argues that the nonsigner provision here in issue is an unreasonable exercise of the police power, unrelated to the public welfare, in violation of Part II, c. 1, § 1, art. 4, of our State Constitution, as limited by arts. 1, 7, 10 and 12 of its Declaration of Rights. On such issues, of course, we are not bound by Federal decisions, which in some respects are less restrictive than our Declaration of Rights. *Coffee-Rich, Inc.* v. *Commissioner of Pub. Health,* 348 Mass. 414, 421. See *Hutcheson* v. *Director of Civil Serv.* 361 Mass. 480, 490.

"It is not for us to inquire into the expediency or the wisdom of the legislative judgment. Unless the act of the Legislature cannot be supported upon any rational basis of fact that reasonably can be conceived to sustain it, the court has no power to strike it down as violative of the Constitution. . . . But unless justified as a valid exercise of the police power, the act must be declared unconstitutional because the enforcement of it will deprive the . . . [defendant] of rights secured under the Constitution. . . . The police power may be exerted in the form of State legislation where otherwise the effect may be to invade rights guaranteed by the Constitution only when such legislation bears a real and substantial relation to the public health, safety, morals, or some other phase of the general welfare." *Sperry & Hutchinson Co.* v. *Director of the Div. on the Necessaries of Life,* 307 Mass. 408, 418. *Mansfield Beauty Academy, Inc.* v. *Board of Registration of Hairdressers,* 326 Mass. 624, 627. *Coffee-Rich, Inc.* v. *Commissioner of Pub. Health,* 348 Mass. 414, 422. *Milligan* v. *Board of Registration in Pharmacy,* 348 Mass. 491, 498–499. *Mobil Oil Corp.* v. *Attorney Gen.* 361 Mass. 401, 413. See *Opinion of the Justices,* 247 Mass. 589, 597–598; *Opinion of the Justices,* 322 Mass. 755, 761; *Opinion of the Justices,* 337 Mass.

796, 798; *Pinnick* v. *Cleary,* 360 Mass. 1, 14–15, and 32–33 (concurring opinion).

In *General Elec. Co.* v. *Kimball Jewelers, Inc.* 333 Mass. 665, 677, we justified the "fair trade" statute as a valid exercise of the police power. We said, "Trade marks, trade names, and the good will in connection with them, which has frequently been acquired at considerable expense by various means of advertising, had been recognized before the adoption of the fair trade law here as valuable property rights which the owner is entitled to have protected from those who would wrongfully impair their value. The producer of a trade marked article which is of a class in open competition may fix the price at which the retailer may sell." Subsequently we said, "The fair trade law was enacted on the theory that manufacturers have a right to have their good will protected, and that any form of price cutting tends to destroy that good will. Our decision . . . [in the *General Electric* case] necessarily holds that a manufacturer's good will is a valid legislative interest, and that the means adopted to protect that good will are appropriate." *Colgate-Palmolive Co.* v. *Elm Farm Foods Co.* 337 Mass. 221, 228–229. In the *Old Dearborn* case, on which we relied, the Supreme Court said, "There is a great body of fact and opinion tending to show that price cutting by retail dealers is not only injurious to the good will and business of the producer and distributor of identified goods, but injurious to the general public as well." 299 U. S. at 195.

The plaintiff elaborates on this rationale. It contends: (1) The statute protects valuable property rights of manufacturers of trade marked commodities. Cut-rate retailing cheapens the commodity in the eyes of the consuming public, and leads the consumer to believe that small, independent merchants are gouging the consumer when they charge reasonable prices. The small independent merchant then shifts his selling efforts to other commodities, or even refuses to carry the trade marked commodity at all, causing a loss of sales not offset by the increased volume sold in discount houses. (2) Effective

fair trade legislation maintains the existence of smaller, independent retailers, enabling them to compete through geographic convenience, the carrying of little called for items not handled by the discounter, and personal service. (3) The consumer is the ultimate beneficiary of the fair trade law. The protection afforded the good will of independent manufacturers enables them to maintain mass marketing systems for quality products and hence to reduce costs through mass production. This forestalls the concentration of power in giant, vertically integrated organizations, loss of the convenience and services offered by smaller merchants, reduction of the number of quality products, and a degree of oligopoly harmful to the consumer. (4) Thus the statute promotes the public welfare, as shown by its official title: "An Act protecting trade mark owners, distributors and the public against injurious and uneconomic practices . . .." St. 1937, c. 398.

The defendant responds that the effect of resale price maintenance is to eliminate intra-brand price competition and that fair trade legislation was indorsed, sponsored and carried forward by wholesale and retail distributors, particularly the National Association of Retail Druggists, whose principal desire was a protected profit margin. See Report of Federal Trade Commn. on Resale Price Maintenance, pp. XXXI, LXI (1945); Report of the Attorney General's National Committee to Study the Antitrust Laws, 154 (1955); Antitrust Law Section, A. B. A., Antitrust Developments from 1955–1968 — A Supplement to Report of the Attorney General's National Committee to Study the Antitrust Laws, 111 (1968). Hence, the defendant contends: (1) The purpose of the statute is to protect the profit margins of distributors for their private advantage. (2) Protection of the manufacturer's good will by eliminating intrabrand price competition bears no real or substantial relation to the public welfare. (3) Protection of a class of distributors by eliminating intra-brand price competition bears no real or substantial relation to the public

welfare. (4) There are less arbitrary methods of protecting distributors and trade mark owners. G. L. c. 110, §§ 2, 3, 7–11 ("palming off," imitation, confusion of goods, "dilution"). G. L. c. 93, §§ 1, 2, 8, 9, 14 (noncompetition covenants, monopolies, price discrimination, boycotts, tie-in sales). G. L. c. 93, §§ 14E–14K (below-cost selling). G. L. c. 93A, § 2 (unfair methods of competition, unfair or deceptive acts or practices). The fair trade laws, the defendant argues, "do not differentiate between *predatory* price-cutting and *healthy* price competition"; they provide "a meat ax where a scalpel at the most is called for."

The resolution of this dispute involves questions of economic theory and political judgment: To what extent is the obvious short-run interest of the consumer in lower prices offset by a long-run interest in preserving a competitive structure? To what extent is it in the public interest to preserve small, independent manufacturers or distributors? What are the costs in protecting the inefficient? What are the benefits in protecting high quality and personal service? Do inter-brand and inter-product competition provide adequate safeguards against monopolistic pricing if intra-brand competition is suppressed? There is respectable current opinion in support of "fair trade," as well as in opposition. See National Institute on Prices and Pricing under the Antitrust Laws, 41 Antitrust L. J. 1, 14, 19 (1971); Callmann, Unfair Competition, Trademarks and Monopolies (3d ed.) § 22.4.

Disputes of this type are regularly and properly resolved in the political and legislative arenas. We cannot take judicial notice that one group of economists is right and the other group wrong. Nor is trial of such issues by a hearing officer, judge or jury likely to arrive at the truth more certainly than trials of strength at the polls and in legislative halls. The mere fact that legislation is sponsored by a trade association does not invalidate it. *Supreme Malt Prod. Co. Inc.* v. *Alcoholic Beverages Control Commn.* 334 Mass. 59, 63. See *Mobil Oil Corp.* v.

*Attorney Gen.* 361 Mass. 401, 417–418. As we said in 1956, "It is not within our province to pass upon the wisdom of an enactment. If the question is fairly debatable we cannot substitute our judgment for that of the Legislature." *General Elec. Co.* v. *Kimball Jewelers, Inc.* 333 Mass. 665, 675. In *Black & Decker Mfg. Co.* v. *Ann & Hope, Inc. of Danvers,* 361 Mass. 18, 21, we recognized that the "fair trade" law "creates an exception to the general public policy of protecting the consumer public by prohibiting monopolies and requiring free and open price competition in the sale of commodities which are neither harmful nor critical in supply," and therefore held that it would be "strictly interpreted and narrowly circumscribed." But that general public policy has been established by legislation rather than by our Constitution, and the Legislature may limit its scope. We adhere to our former judgment that the Legislature could rationally conclude that authorization of resale price maintenance serves the public interest.

4. *Delegation.* In *General Elec. Co.* v. *Kimball Jewelers, Inc.,* 333 Mass. at 677–678, we dealt separately with the question whether the "fair trade" law constituted an unlawful delegation of power to the owner of the trade mark or brand, and concluded that it did not. Our entire discussion of that question was as follows: "It was said in *Old Dearborn Distributing Co.* v. *Seagram-Distillers Corp.* 299 U. S. 183, 194, 'We find nothing in this situation to justify the contention that there is an unlawful delegation of power to private persons to control the disposition of the property of others . . ..' See also *Ely Lilly & Co.* v. *Saunders,.* 216 N. C. 163; *Johnson & Johnson* v. *Weissbard,* 121 N. J. Eq. 585·; *Burche Co.* v. *General Electric Co.* 382 Pa. 370; *Weco Products Co.* v. *Reed Drug Co.* 225 Wis. 474." The *Burche* case was overruled in *Olin Mathieson Chem. Corp.* v. *White Cross Stores, Inc.* 414 Pa. 95, 98.

Thus we relied primarily on the opinion of the Supreme Court in the *Old Dearborn* case. "The entire opinion [of the Supreme Court] on the point consisted of little

more than the announcement of the conclusion. . . . Cases holding [unconstitutional] delegations to private parties were distinguished on the ground that 'Here, the restriction, already imposed with the knowledge of appellants [retailers], ran with the acquisition and conditioned it.' . . . The various opinions that deny that any delegation to private parties is involved in the non-signer provisions seem clearly unsound. The plain fact is that the statute confers upon the manufacturer (or other distributor), acting in combination with a single retailer, to fix the minimum price at which other retailers may sell. That is undeniably a delegation of power to private parties." Davis, Administrative Law (1958 ed.) § 2.14, pp. 145–147.

The question remains whether the delegation is constitutionally permissible. "It is well established in this Commonwealth and elsewhere, that the Legislature cannot delegate the general power to make laws, conferred upon it by a constitution like that of Massachusetts." *Brodbine* v. *Revere*, 182 Mass. 598, 600, and cases cited. Article 30 of the Declaration of Rights. Part II, c. 1, § 1, of our Constitution, particularly art. 4. *Opinion of the Justices*, 302 Mass. 605, 614. *Opinion of the Justices*, 328 Mass. 674, 675. See Davis, Administrative Law (1958 ed.) § 2.02. Delegation of legislative power to private parties has sometimes been held to violate the due process clause of the Fourteenth Amendment. *Eubank* v. *Richmond*, 226 U. S. 137, 143–144. *Washington ex rel. Seattle Trust Co.* v. *Roberge*, 278 U. S. 116, 121–123. *Carter* v. *Carter Coal Co.* 298 U. S. 238, 311. Compare *Butte City Water Co.* v. *Baker*, 196 U. S. 119, 127; *St. Louis, Iron Mountain & So. Ry.* v. *Taylor*, 210 U. S. 281, 287; *Thomas Cusack Co.* v. *Chicago*, 242 U. S. 526, 531.

One of the exceptions to or qualifications of the non-delegation doctrine is that "the Legislature may delegate to a board or an individual officer the working out of the details of a policy adopted by the Legislature." *Commonwealth* v. *Hudson*, 315 Mass. 335, 341, and cases cited, 341–342. See *Opinion of the Justices*, 330 Mass.

713, 719; *Opinion of the Justices*, 334 Mass. 721, 743; *Massachusetts Bay Transp. Authy.* v. *Boston Safe Deposit & Trust Co.* 348 Mass. 538, 544; *Massachusetts Housing Fin. Agency* v. *New England Merchants Natl. Bank*, 356 Mass. 202, 214. Rate making or price fixing may be delegated to a public board or officer with very general guides, but only if provision is made for judicial review of claims of confiscation. *Opinion of the Justices*, 251 Mass. 569, 610–611 (insurance premiums, "adequate, just, reasonable and nondiscriminatory"). *Supreme Malt Prod. Co. Inc.* v. *Alcoholic Beverages Control Commn.* 334 Mass. 59, 61, 63 (alcoholic beverage prices, not "excessive, inadequate, or unfairly discriminatory"). See *Aetna Cas. & Sur. Co.* v. *Commissioner of Ins.* 358 Mass. 272, 278; *G & M Employment Serv. Inc.* v. *Commonwealth*, 358 Mass. 430, 438.

Delegation of governmental powers to private persons or groups can be no broader than that to public boards or officers. Powers of nomination in a private organization have been upheld. See *Bradley* v. *Zoning Adjustment Bd. of Boston*, 255 Mass. 160, 167–170; *Kidder* v. *Mayor of Cambridge*, 304 Mass. 491, 495. But it would not be proper to authorize private organizations to spend public funds. *Opinion of the Justices*, 337 Mass. 777, 784. A proposal that the board of registration of barbers approve schedules of days and hours upon petition by at least seventy per cent of the registered and practicing barbers in any city or town was subject to constitutional objection as a delegation of legislative power: "The public convenience and the means of livelihood of the minority of barbers in a city or town — a minority which might be as large as thirty per cent — are subjected to the will of seventy per cent. There is no discernible connection with public health or safety in a provision which makes a trade agreement a condition precedent to board action. The result could be economic tyranny." *Opinion of the Justices*, 337 Mass. 796, 799. Compare *Trumper* v. *Quincy*, 358 Mass. 311, 312–313, upholding a provision

of a zoning ordinance requiring a three-quarters vote of the city council to adopt a change over the written protest of the owners of twenty per cent of the affected land; *Godfrey* v. *Massachusetts Medical Serv.* 359 Mass. 610, 613.

We recognize that the nonsigner provision seems to be widely regarded as a vital element in a workable "fair trade" system. Indeed, as the number of States without any "fair trade" statutes has grown, competitive pressures may have made it more difficult to maintain a voluntary system. See, e.g., *Gadol* v. *Dart Drug Corp. of Md.* 222 Md. 372, 379. Apparently mail order sales from stores in non-fair trade States cannot be subjected to the system. *Bissell Carpet Sweeper Co.* v. *Masters Mail Order Co. of Washington, D. C. Inc.* 240 F. 2d 684 (4th Cir.). *General Elec. Co.* v. *Masters Mail Order Co. of Washington, D. C. Inc.* 244 F. 2d 681 (2d Cir.), cert. den. 355 U. S. 824. We also recognize that the Legislature may have thought that the natural safeguards arising from the voluntary participation of many retailers and from inter-brand and inter-product competition would normally prevent injustice or tyranny.

But the statute here in issue is not limited to situations where most retailers participate voluntarily and only a few dissenters are coerced by the nonsigner provision. There is no provision for participation by any public board or officer in the process by which Corning fixes the prices at which Ann & Hope may sell its merchandise, nor for any policy or standard to govern the prices set by Corning, nor for notice, hearing or judicial review of the prices fixed by the manufacturer. We do not accept the argument that the delegation is not materially different from the type of delegation which leaves power in the hands of any property owner. Once Ann & Hope has acquired glassware not subject to any restriction — for example, by a purchase in Rhode Island, where there is no "fair trade" law — the fact that the glassware carries a Corning trade mark gives Corning no property interest in the glassware, and a resale by Ann & Hope is a

sale of its own property. Ann & Hope does not sell Corning's trade mark or good will or any interest therein.

We hold that the nonsigner provision of G. L. c. 93, § 14B, amounts to an unconstitutional delegation of legislative power to private parties, and to that extent we overrule *General Elec. Co.* v. *Kimball Jewelers, Inc.* 333 Mass. 665. Our holding is in harmony with most of the decisions in other States since that decision was rendered, although there are conflicting decisions. *Olin Mathieson Chem. Corp.* v. *Francis,* 134 Colo. 160, 183. *Bissell Carpet Sweeper Co.* v. *Shane Co. Inc.* 237 Ind. 188, 199. *Bulova Watch Co. Inc.* v. *Robinson Wholesale Co.* 252 Iowa 740, 748. *Quality Oil Co. Inc.* v. *E. I. du Pont de Nemours & Co. Inc.* 182 Kans. 488, 498. *Dr. G. H. Tichenor Antiseptic Co.* v. *Schwegmann Bros. Giant Super Mkts.* 231 La. 51, 74. *Remington Arms Co. Inc.* v. *G. E. M. of St. Louis, Inc.* 257 Minn. 562, 569. *American Home Prod. Corp.* v. *Homsey,* 361 P. 2d 297, 301 (Okla.). *General Elec. Co.* v. *Wahle,* 207 Ore. 302, 326–327. *Olin Mathieson Chem. Corp.* v. *White Cross Stores, Inc.* 414 Pa. 95, 98. *House of Seagram Inc.* v. *Assam Drug Co.* 85 S. D. 27, 36. *Bulova Watch Co.* v. *Zale Jewelry Co. of Cheyenne,* 371 P. 2d 409, 418–419 (Wyo.). Compare *General Elec. Co.* v. *Telco Supply, Inc.* 84 Ariz. 132, 140; *Warner Stores Co.* v. *E. R. Squibb & Sons, Inc.* 43 Del. Ch. 129, 130–131 (Supr. Ct.); *G.E.M. Sundries Co. Inc.* v. *Johnson & Johnson, Inc.* 283 F. 2d 86, 92 (9th Cir.) (Hawaii); *Kinsey Distil. Sales Co.* v. *Foremost Liquor Stores, Inc.* 15 Ill. 2d 182, 188; *Corning Glass Works* v. *Max Dichter Co. Inc.* 102 N. H. 505, 511; *United States Time Corp.* v. *Ann & Hope Factory Outlet, Inc.* 98 R. I. 503, 510, 513.

5. It follows that in each case an interlocutory decree sustaining the plea in bar and a final decree dismissing the bill are to be entered with costs of appeal to the defendant.

*So ordered.*