TOWN OF ARLINGTON *vs.* BOARD OF CONCILIATION AND ARBITRATION & others[1] (and a companion case[2]).

Suffolk.    April 8, 1976. — August 10, 1976.

Present: REARDON, QUIRICO, KAPLAN, & WILKINS, JJ.

*Labor.  Public Employment.  Arbitration.  Constitutional Law,* "Home Rule Amendment," Delegation of powers, Equal protection of laws. *Municipal Corporations,* Relation to Commonwealth, "Home rule," Municipal finance. *General Court,* Power over municipality. *Arlington.*

St. 1973, c. 1078, § 4, which provides for binding arbitration in labor disputes between municipalities and policemen and firefighters, does not violate the Home Rule Amendment to the Massachusetts Constitution. [773-774]

St. 1973, c. 1078, § 4, which provides for binding arbitration in labor disputes between municipalities and policemen and firefighters, does not constitute an improper delegation of legislative power to a panel of private citizens in violation of art. 30 of the Declaration of Rights and pt. 2, c. 1, § 1, of the Massachusetts Constitution. [775-777]

St. 1973, c. 1078, § 4, which provides for binding arbitration in labor disputes between municipalities and policemen and firefighters, does not contravene the "one-man, one-vote" principle in violation of the equal protection clause of the Fourteenth Amendment to the United States Constitution. [777-778]

---

[1] The other defendants are representatives of the members of Local 1297, International Association of Firefighters, AFL-CIO.

[2] Town of Arlington *vs.* Board of Conciliation and Arbitration & another. The other defendant is Arthur Guarente, individually and as representative of the members of the Arlington Ranking Officers Association.

St. 1973, c. 1078, § 4, which provides for binding arbitration in labor disputes between municipalities and policemen and firefighters, is not inconsistent with municipal finance laws, and a decision made by an arbitration panel pursuant to the statute is required to be satisfied by a municipal appropriation. [778-779]

Two CIVIL ACTIONS commenced in the Superior Court on February 7, 1975, and June 13, 1975, respectively.

The cases were reported by *Hayer,* J., to the Appeals Court. The Supreme Judicial Court granted a request for direct review.

*John F. Maher,* Assistant Town Counsel, for the town of Arlington.

*Andrew J. McElaney,* Assistant Attorney General, for the Board of Conciliation and Arbitration.

*Warren H. Pyle* for Local 1297, International Association of Firefighters & others.

*Herbert P. Gleason,* Corporation Counsel, *& Paul T. Edgar,* Assistant Corporation Counsel, for the city of Boston, and *D. M. Moschos,* Special Assistant City Solicitor, for the city of Worcester, amici curiae, joined in a brief.

REARDON, J.   These cases were consolidated and are here on a reservation and report by a judge of the Superior Court without decision. An application for direct appellate review was granted. The actions were brought by the town of Arlington (town) to set aside "last and best offer" arbitration awards issued pursuant to St. 1973, c. 1078, § 4 (the act), which established wages, vacation pay, sick leave, and other conditions of employment for police officers and firefighters in Arlington for the year July 1, 1974, to June 30, 1975. The town challenged the binding arbitration statute as unconstitutional and in conflict with other prevailing General Laws of the Commonwealth. The cities of Boston and Worcester have joined in the plaintiff's brief as amici curiae, and some eighty-five towns and cities of the Commonwealth appear to indorse the plaintiff's brief. This is the first challenge directed toward the act and presents the following basic questions:

1. Does the act, in providing for binding arbitration for

policemen and firefighters, violate the Home Rule Amendment to the Massachusetts Constitution in that it removes all decision-making power with regard to those services from the municipality?

2. Does the act constitute an unconstitutional delegation of legislative power to a panel of private individuals in violation of art. 30 of our Declaration of Rights, and pt. 2, c. 1, § 1, of the Constitution of the Commonwealth?

3. Does the act contravene the "one-man, one-vote" principle in violation of the equal protection clause of the Fourteenth Amendment to the United States Constitution?

4. Would the enforcement of an arbitration panel's award under the act conflict with the provisions of the General Laws and statutes regulating the conduct of municipal finance, and, if so, which should prevail?

The facts are briefly stated as follows. On February 7, 1975, in the case of the firefighters, and on June 13, 1975, in the case of the policemen, the town commenced these actions seeking declaratory relief from the enforcement of arbitrators' awards which had been made in each case. Local 1297, International Association of Firefighters, AFL-CIO, was the collective bargaining representative of the firefighters. The Arlington Ranking Officers Association was the collective bargaining representative of the ranking police officers of the town. Both associations were voluntary and unincorporated. Separate negotiations between them and the town failed to produce collective bargaining agreements, whereupon each employee organization petitioned the Board of Conciliation and Arbitration (board) for mediation and fact finding. After this had been granted and no contracts emerged, the employee organizations each petitioned the board to investigate. Following investigation the board determined that the conditions for binding arbitration existed as to both organizations and ordered three-member arbitration panels to be established under the act. Each panel consisted of a member selected by the town, a member selected by the employee organization, and an impartial chairman chosen by the other two members

from a list of arbitrators prepared by the board. Hearings were held in each case and each panel received written statements of the last and best offers of the town and the employee organizations on each of the disputed issues. In conformance with the statute, which requires the panel to select one of the two written statements, a majority of each panel selected the written statement submitted by the employee organizations. The town has refused to proceed in accordance with either one of the awards. The only claims pressed by the town relate to the questions stated above. The board and the associations argue that the act is a valid legislative enactment.[3]

---

[3] Statute 1973, c. 1078, § 4, which is rather lengthy in its entirety, provides in part: "If an employee organization duly recognized as representing the firefighters or police officers of a city, town or district is engaged in an impasse which has continued for thirty days after the publication of the fact-finders report pursuant to section nine of chapter one hundred and fifty E, said employee organization shall petition the board to make an investigation. If, after investigation, the board determined that: (1) the requirements of section nine of chapter one hundred and fifty E have been complied with in good faith by the employee organization; (2) thirty days have passed since the date of publication of the fact-finders report pursuant to said section nine; (3) the proceedings for the prevention of any prohibited practices have been exhausted, provided that any such complaints have been filed with the commission, prior to the date of the fact-finders report; and (4) an impasse exists, the board shall immediately notify the employer and the employee organization that the issues in dispute shall be resolved by a three-member arbitration panel.

"Said panel shall be comprised of three arbitrators, one selected by the employer, one selected by the employee organization, and a third an impartial arbitrator, who shall act as chairman of the panel, who shall be selected by the two previously selected arbitrators. In the event that either party fails to select an arbitrator ... the board shall appoint the arbitrator or arbitrators necessary to complete the panel, which shall act with the same force and effect as if the panel had been selected without intervention by the board.

"The arbitration panel shall, acting through its chairman, hold a hearing within ten days after the date of appointment of the chairman .... The chairman shall give at least seven days' notice in writing to each of the other arbitrators, and to the representatives of the municipal employer and employee organization of the time and place of such hearing. The chairman shall preside over the hearing and shall take testimony....

"A record of the proceedings shall be kept, and the chairman shall arrange for the necessary recording service.... At the conclusion of the hearing, each party shall submit a written statement containing its

1. We consider first whether the act violates the Home Rule Amendment (art. 89, amending art. 2 of the Amendments to the Constitution of the Commonwealth). There can be no question that prior to the adoption of that amendment the cities and towns of the Commonwealth were subject to the complete control of the General Court. We made reference to that fact in *Board of Appeals of Hanover* v. *Housing Appeals Comm. in the Dep't of Community Affairs*, 363 Mass. 339, 355-356 (1973). We also stated in that case at 358 that it was the intention of the amendment to grant to the cities and towns "independent municipal powers which they did not previously inherently possess." On the other hand, in *Bloom* v. *Worcester*, 363 Mass. 136, 144 n.4 (1973), we made it plain that the Legislature still "may restrict local legislative action or deny municipalities power to act at all . . . ." These cases and the text of art. 89 itself indicate that, while the scope of the authority granted to municipalities to act on municipal problems is very broad, the scope of the disability imposed on the Legislature by the amendment is quite narrow. Section 6 of the amendment, while providing the broad grant of governmental powers referred to above, limits the municipal exercise of those powers to acts which are "not inconsistent with the constitution or laws enacted by the general court in conformity with powers reserved to the general court by section eight." Section 8 then provides that "[t]he general court shall have the power to act in relation to cities and towns . . . by general laws which apply

last and best offer for each of the issues in dispute to the panel, which shall take said statements under advisement. Within ten days after the conclusion of the hearing, a majority of the panel shall select one of the two written statements and shall immediately give written notice of selection to the parties. The selection shall be final and binding upon the parties and upon the appropriate legislative body. . . ."

"Any determination or decision of the arbitration panel if supported by material and substantive evidence on the whole record shall be binding upon the parties and may be enforced at the instance of either party or of the arbitration panel in the superior court in equity; provided, that the scope of arbitration in police matters shall be limited to wages, hours and conditions of employment and shall not include the following matters of inherent managerial policy: the right to appoint, promote, assign and transfer employees."

alike to all cities, or to all towns, or to all cities and towns, or to a class of not fewer than two . . . ."

There would appear to be no argument here that the act, which applies to all cities and towns, is anything other than a general law. See *Opinion of the Justices,* 356 Mass. 761, 767 (1969). It would seem to reflect the proper employment of § 8 of the Home Rule Amendment. Furthermore, it is no longer subject to debate that the General Court has the power to legislate in the area of municipal wages and benefits. We have so stated in *Quinlan* v. *Cambridge,* 320 Mass. 124, 126 (1946), and nothing in the Home Rule Amendment suggests that this power has been withdrawn or limited (other than by § 8 of the amendment which has been complied with in this case). Here the arbitrators' awards which are contested by the town relate solely to wages and benefits. We note that G. L. c. 150E, § 7, inserted by St. 1973, c. 1078, § 2, provides in part, "If a collective bargaining agreement reached by the employer and the exclusive representative contains a conflict between . . . any municipal personnel ordinance, by-law, rule or regulation," the terms of the collective bargaining agreement shall prevail. We made it plain in *Board of Appeals of Hanover* v. *Housing Appeals Comm. in the Dep't of Community Affairs, supra,* and in *Bloom* v. *Worcester, supra,* that in case of inconsistency or conflict a local ordinance or by-law must give way as in these cases where a general law has been enacted by the General Court in accordance with § 8 of the Home Rule Amendment. We thus conclude, for instance, that the award of the majority of the arbitration panel which provided four weeks' vacation to firefighters after ten years of service supersedes that town by-law that granted four weeks' vacation after twelve years of service. In short, the opinions cited above lead only to the conclusion that the binding arbitration procedure provided by the act is not violative of art. 89. See *Board of Health of N. Adams* v. *Mayor of N. Adams,* 368 Mass. 554, 565-566 (1975); *Del Duca* v. *Town Adm'r of Methuen,* 368 Mass. 1, 8-9 (1975).

2. The town asserts that the act is an unconstitutional delegation of power to a panel of private individuals specifically stated to be a violation of art. 5 of our Declaration of Rights.[4] However, it would appear that the doctrine of nondelegation derives rather from art. 30 of our Declaration of Rights and from pt. 2, c. 1, § 1, art. 4, of our Constitution. The question of delegation was carefully considered in *Corning Glass Works* v. *Ann & Hope, Inc.*, 363 Mass. 409, 420-423 (1973). There we made reference to the inability of the General Court to delegate general power to make laws. See *Brodbine* v. *Revere*, 182 Mass. 598, 600 (1903), and cases cited. However, we made it equally plain that the Legislature may delegate to a board or an individual officer the implementation of details of a legislative policy. See *Massachusetts Bay Transp. Authority* v. *Boston Safe Deposit & Trust Co.*, 348 Mass. 538, 544 (1965); *Commonwealth* v. *Diaz*, 326 Mass. 525, 527 (1950); *Commonwealth* v. *Hudson*, 315 Mass. 335, 341 (1943).

It is to be emphasized that the act defines an elaborate and detailed framework within which the arbitrators must act. Section 4 provides with specificity ten standards to guide the arbitrators in arriving at a decision.[5] Regulations

---

[4] "All power residing originally in the people, and being derived from them, the several magistrates and officers of government, vested with authority, whether legislative, executive, or judicial, are their substitutes and agents, and are at all times accountable to them."

[5] "The factors, among others, to be given weight by the arbitration panel in arriving at a decision shall include:
(1) The financial ability of the municipality to meet costs.
(2) The interests and welfare of the public.
(3) The hazards of employment, physical, education, and mental qualifications, job training and skills involved.
(4) A comparison of wages, hours and conditions of employment of the employees involved in the arbitration proceedings with the wages, hours and conditions of employment of other employees performing similar services and with other employees generally in public and private employment in comparable communities.
(5) The decisions and recommendations of the fact finder.
(6) The average consumer prices for goods and services, commonly known as the cost of living.

have been promulgated by the board which govern procedures and the conduct relative to hearings. Arbitration must be preceded by negotiation, mediation and fact finding, and may be followed at the instance of either party by judicial review in the Superior Court. The board properly contends that these guidelines, standards and procedures provided by the act protect against arbitrary action and provide also a proper occasion for delegation. See *Massachusetts Housing Fin. Agency* v. *New England Merchants Nat'l Bank,* 356 Mass. 202, 214 (1969); *Massachusetts Bay Transp. Authority* v. *Boston Safe Deposit & Trust Co., supra* at 544-550; *Landers* v. *Eastern Racing Ass'n,* 327 Mass. 32, 44-45 (1951).

Nor do we view the act as setting up the members of the arbitration panel as an appropriating authority. To establish salaries is not to appropriate the funds for them. See *Quinlan* v. *Cambridge,* 320 Mass. 124, 126 (1946), where it was pointed out that the "establishment of salaries of municipal officers and employees is an act that is legislative in nature and may be . . . delegated to the board or officer who appoints them or to some other board or officer." See *Ford* v. *Retirement Bd. of Lawrence,* 315 Mass. 492, 494 (1944) ("The Legislature may prescribe the terms and conditions of pensions and retirement allowances [of firemen, and] place the burden of paying them on cities and towns"). Furthermore, it is settled that the Legislature has the power to create a municipal obligation requiring the outlay of funds and that this power may be delegated if the delegation is otherwise proper and lawful. See *Board of Health of N. Adams* v. *Mayor of*

---

(7) The overall compensation presently received by the employees, including direct wages and fringe benefits.

(8) Changes in any of the foregoing circumstances during the pendency of the arbitration proceedings.

(9) Such other factors, not confined to the foregoing, which are normally or traditionally taken into consideration in the determination of wages, hours and conditions of employment through voluntary collective bargaining, mediation, fact-finding, arbitration or otherwise between the parties, in the public service or in private employment.

(10) The stipulation of the parties."

*N. Adams*, 368 Mass. 554, 564-565, 567-568 (1975), and cases cited.

The delegation does not fail in that it was conferred on a "private person." As was stated in *Attorney Gen.* v. *Drohan*, 169 Mass. 534, 535 (1897), a person may be deemed a public official where he is fulfilling duties which are public in nature, "involving in their performance the exercise of some portion of the sovereign power, whether great or small." The associations argue then that the arbitrators provided for by the act while performing their duties under the act are essentially public officers. In any event, as was pointed out in the *Corning Glass Works* case, this distinction in itself is not determinative, and delegations to private persons are not forbidden so long as proper safeguards are provided. *Corning Glass Works* v. *Ann & Hope, Inc.*, 363 Mass. 409, 420 (1973), and cases cited. In this instance the neutral arbitrator/chairman (the panel member who in both the firefighters' and the policemen's cases cast the deciding vote and whom the parties properly recognize as the key person in the statutory scheme), whether classified as a "public" or a "private" person, is impartial and has no personal or private interest in the dispute. Furthermore, he must follow detailed procedures and is bound to apply the statutory standards in reaching a decision. We are less concerned with the labels placed on the arbitrators as public or private, as politically accountable or independent, than we are with "the totality of the protection against arbitrariness" provided in the statutory scheme. K.C. Davis, Administrative Law 54 (Supp. 1970). As indicated above, the safeguards against arbitrary action in this statutory scheme are extensive, and they provide the act with a sound constitutional basis. In sum, we do not view the act as an improper delegation of legislative authority.

3. It is contended by the town that the act is a contravention of the "one-man, one-vote" concept, and is therefore violative of the Fourteenth Amendment to the United States Constitution. First of all, it is not clear that the one-man, one-vote principle applies at all to this arbitra-

tion panel which in accordance with the Legislature's directions is appointed rather than elected. See *Sailors* v. *Board of Educ. of the County of Kent,* 387 U.S. 105 ,108-110 (1967). See also *Moore* v. *Election Comm'rs of Cambridge,* 309 Mass. 303, 321 (1941) ("[T]he General Court has broad power to provide that officers of a city shall be appointed by the Governor rather than elected...."). Beyond this, the decisions in the *Sailors* case, *supra,* and in *Avery* v. *Midland County,* 390 U.S. 474 (1968), indicate that the one-man, one-vote concept does not apply to an arbitration panel that does not exercise general legislative power. The panel whose task it is to resolve a collective bargaining impasse by selecting between the two final offers of the parties cannot be described as "a unit of local government with general responsibility and power for local affairs," *Avery* v. *Midland County, supra* at 483, or a unit "with general governmental powers over an entire geographic area ...." *Id.* at 485-486. In the *Sailors* case, the county school board in question was responsible for, among other things, the appointment of a county school superintendent, preparation of an annual budget and levy of taxes, distribution of delinquent taxes, employment of teachers for special educational programs, and the assignment of areas to particular school districts. *Id.* at 110 n.7. The powers of that board appear far greater in scope than those entrusted to the arbitration panel in these cases. Nevertheless, the court held that the school board was not exercising the general legislative powers which would require the application of the one-man, one-vote rule. *Id.* at 110-111. There is nothing to the town's claim on this point.

4. We are asked to consider whether the provisions of the act are inconsistent with the municipal finance laws and whether, if so, the former or the latter should prevail. The act itself makes provision to the effect that the arbitration panel's selection of one of the two written statements, submitted in this instance by the town and the employees in the two cases, is binding on the appropriate legislative body, and enforceable thereafter in the Superior Court. The Legislature has signaled in effect that awards made

under the statute shall be satisfied on a mandatory basis by municipal appropriation thereafter. We recognized that fact in *Board of Health of N. Adams* v. *Mayor of N. Adams,* 368 Mass. 554, 566 (1975), where we stated that G. L. c. 44, § 31, set up a municipal control on "irresponsible spending by departments of local governments," but went on to say that the function of that section "is not to bar local spending that is required by a valid State program." We see no problem in requiring special action by the town through its finance committee and town meeting to meet by appropriation the award of the arbitrators.

5. We have had cited to us in the several briefs a number of cases from other jurisdictions which were proffered in support of contentions which were under argument. The questions which we decide today, however, find their answers largely in a fair interpretation of the relevant provisions of the United States and Massachusetts Constitutions, and our own statutory and case law. We simply note that the act has its counterparts in other States and that a majority of those jurisdictions whose relevant statutory and constitutional provisions most closely resemble our own support our conclusion that the act suffers from no constitutional infirmity. See *Biddeford* v. *Biddeford Teachers Ass'n,* 304 A.2d 387 (Me. 1973); *Amsterdam* v. *Helsby,* 37 N.Y.2d 19 (1975); *Warwick* v. *Warwick Regular Firemen's Ass'n,* 106 R.I. 109 (1969); *State* v. *Laramie,* 437 P.2d 295 (Wyo. 1968). See also Annot., 68 A.L.R.3d 885 (1976).

6. The town devotes much of its brief to what is essentially a challenge to the wisdom of the policy decisions made by the Legislature in enacting St. 1973, c. 1078, § 4. We are referred to what is apparently a not insignificant collection of literature by scholars in the field of labor relations critical of binding arbitration as a device for settling collective bargaining disputes, especially those in the public sector. Furthermore, the town vigorously argues that this particular scheme, in that it imposes a decision of "politically unaccountable" arbitrators against the wishes of popularly elected local government officials, is not con-

sonant with the proper "exercise of political power in a representative democracy." While we do not question the respectability of the political philosophy articulated or the apparent sincerity with which it is expressed, the town fails to give this argument constitutional content. Particular political, social, and economic beliefs, no matter how fervently espoused, are not translated into constitutional imperatives without reference to specific constitutional provisions. In this opinion we have considered the specific constitutional challenges advanced by the town and found them insufficient to render the act invalid. The further public policy arguments are of a "type ... regularly and properly resolved in the political and legislative arenas." *Corning Glass Works* v. *Ann & Hope, Inc.,* 363 Mass. 409, 419 (1973). We see no constitutional impediment to the Legislature's structuring municipal labor relations in the manner provided in the act.

We note that the act by its terms expires on June 30, 1977. St. 1973, c. 1078, § 8. The cities and towns of the Commonwealth do not represent a small, inarticulate or unsophisticated group unable to present their positions to the General Court. We suggest that the proper forum for the policy arguments pressed on us here is in the Legislature as it decides whether the binding arbitration procedures of the act with respect to police and firefighter collective bargaining disputes should be continued and, if so, whether any modifications should be made.

In conclusion we note that in attempting to strike a balance between protecting the public health and safety and affording recognition to the collective bargaining rights of public employees the Legislature is moving in a difficult and controversial area. See *Director of the Div. of Employee Relations of the Dep't of Administration & Fin.* v. *Labor Relations Comm'n, ante,* 162, 169 n.9, 175 (1976). This particular legislation appears to seek to provide an alternative to strikes by key municipal service employees. It has been preceded by somewhat similar legislation dealing with authorities but the procedures which this act sets forth have been more carefully and fully framed. We see

the act as based on constitutional grounds sufficient in their strength to support it. It follows that St. 1973, c. 1078, § 4, is not unconstitutional, and judgment is to be entered confirming the award of the panel in each instance.

*So ordered.*