TOWN OF NORFOLK & OTHERS[1] *vs.* DEPARTMENT OF
ENVIRONMENTAL QUALITY ENGINEERING & another.[2]

Norfolk. December 4, 1989. - April 11, 1990.

Present: LIACOS, C.J., ABRAMS, NOLAN, O'CONNOR, & GREANEY, JJ.

*Proposition 2½. Municipal Corporations*, Dump, Water supply. *Dump.*

The local mandate provision, G. L. c. 29, § 27C, of the statute commonly
known as Proposition 2 ½, which relieves cities and towns from certain
expenditures mandated by State regulations, had no application to a
requirement by a State regulatory agency that a town construct an im-
pervious liner to prevent groundwater pollution as a condition to the
approval of a proposed expansion of the town's solid waste landfill, inas-
much as the town, which had no obligation to operate a landfill, had
voluntarily chosen to participate in this heavily regulated industry,
thereby subjecting itself to the same conditons and costs as are ac-
cepted by a private party engaged in the same activity. [238-241]

CIVIL ACTION commenced in the Superior Court Depart-
ment on May 10, 1985.

The case was heard by *William H. Welch*, J., on motions
for summary judgment.

The Supreme Judicial Court granted a request for direct
appellate review.

*James R. Milkey*, Assistant Attorney General (*Alice
Daniel*, Deputy Attorney General, with him) for the
defendants.

*Paul D. Maggioni*, Town Counsel of Norfolk (*James B.
Lampke*, Town Counsel of Hull, & *Donald J. Scutiere*,
Town Counsel of Boxford, with him) for the plaintiffs.

---

[1]Town of Hull and town of Boxford, as interveners.

[2]Commissioner of the Department of Environmental Quality Eng-
ineering. By St. 1989, c. 240, § 101, the name of the agency was changed
to Department of Environmental Protection.

*Peter Shelley & Stephanie Pollack*, for Conservation Law Foundation of New England, Inc., amicus curiae, submitted a brief.

*Leonard Kopelman, Barbara J. Saint Andre & Karen V. Kelly*, for Massachusetts Municipal Association, amicus curiae, submitted a brief.

LIACOS, C.J. The plaintiff (Norfolk)[3] owns and operates a solid waste landfill. Norfolk sought approval from the defendant (DEQE) to expand the landfill. DEQE granted approval of the expansion of the landfill, conditioned on the installation of an "impervious liner" to prevent groundwater pollution due to leachate, a liquid formed by rainwater percolating down through the layers of refuse in the landfill. Norfolk began installing the liner, and received a determination from the division of local mandates (DLM) that, under G. L. c. 29, § 27C (1988 ed.),[4] the local mandate provision of a statute commonly known as "Proposition 2½,"[5] it was exempt from any requirement to install a liner and that there was a deficiency of $144,027.50. Having received that determination from DLM, Norfolk commenced this action in the Superior Court to enforce its rights. See G. L. c. 29, § 27C (*e*). A judge in the Superior Court granted Norfolk's motion for summary judgment (and those of Hull and Boxford) and denied DEQE's cross-motions for summary judgment and motion for reconsideration.

We reverse the judgment.

---

[3]Norfolk initially filed its complaint in 1985, and the towns of Hull and Boxford intervened in 1987. Because the factual development of this case focused on Norfolk, and because our decision in this case would not vary with additional facts relevant to Hull and Boxford, we refer solely to those facts pertaining to Norfolk.

[4]See Section 1, *infra*, of this opinion for a description of the statutory scheme of G. L. c. 29, § 27C.

[5]"Proposition 2½" is a colloquialism derived from a 1978 tax-limitation measure in California, and was based on the initial objective of § 1 of St. 1980, c. 580, "to restrict most cities' and towns' total annual assessments against their real and personal property to 2½% of the fair cash value of that property." *Massachusetts Teachers Ass'n.* v. *Secretary of the Commonwealth*, 384 Mass. 209, 212 n.4 (1981).

1. *Statutory background.* There are two principal statutes at issue in this case. General Laws c. 111, § 150A (1986 ed.),[6] deals with the regulation of refuse treatment and disposal facilities, including sanitary landfills. The statute establishes a process by which local boards of health and the DEQE approve and oversee the maintenance and operation of refuse treatment and disposal facilities.

Under the statute, "[a] facility shall not be constructed or operated unless the proposed use and the plans or design therefor have been approved by the [DEQE] . . . ." G. L. c. 111, § 150A (1986 ed.). In addition, the statute provides that "[e]very person, including every political subdivision of the commonwealth, maintaining or operating a facility, shall maintain and operate the same in such manner as will protect the public health, comfort and convenience and prevent a nuisance or a danger to the public health . . . . Upon determination that the operation or maintenance of a facility results in a nuisance or a danger to the public health, such assignment may be rescinded or suspended or may be modified through the imposition or amendment of conditions . . . . The [DEQE] shall adopt and may from time to time amend rules and regulations, and the commissioner may issue orders, to enforce the provisions of this section." G. L. c. 111, § 150A (1986 ed.).

Also at issue in this case is G. L. c. 29, § 27C, the "local mandate provision" of Proposition 2½. The relevant portion of that statute provides: "Any administrative rule or regulation taking effect on or after January first, nineteen hundred and eighty-one which shall result in the imposition of additional costs upon any city or town shall not be effective until the general court has provided by general law and by appropriation for the assumption by the commonwealth of such costs, exclusive of incidental local administrative expenses, and unless the general court provides by appropriation in

---

[6]The statute's amendment by St. 1987, c. 174, § 12, does not affect the decision we reach today.

each successive year for such assumption." G. L. c. 29, § 27C (c).[7]

"Among the concerns . . . embraced by Proposition 2½ were those of 'freeing cities and towns from expenditures mandated by State law' and of 'preventing the involuntary imposition on cities and towns of certain direct service cost obligations resulting from statutes and administrative rules or regulations.' " Lexington v. Commissioner of Educ., 393 Mass. 693, 695-696 (1985), quoting Massachusetts Teachers Ass'n v. Secretary of the Commonwealth, 384 Mass. 209, 216 (1981).

2. Facts. The material facts are undisputed, and we recite those relevant to the issue we decide today.

Generally, prior to 1971, open burning dumps were used to dispose of refuse. After the passage of G. L. c. 111, § 150A, open burning dumps were replaced by landfills. After this change, the waste material which once would have been burned provided the source for a higher concentration of pollutants in the leachate, which could escape into groundwater, a primary source of drinking water.

DEQE, in accordance with the applicable statutes and regulations, supervised the conversion of open dumps and their replacement by landfill facilities. Beginning in the late 1970's, DEQE began to consider safeguards and conditions to control the discharge of leachate into ground water. One method of controlling leachate involves the prevention of the entry of external waters into the waste layers. This may be accomplished by covering and grading the waste pile with

---

[7]Under subsection (d) of G. L. c. 29, § 27C, a town may request that DLM (a division in the State Auditor's office) determine whether the costs imposed by a rule or regulation subject to the provisions of Proposition 2½ have been paid in full by the Commonwealth, and, if not, the amount of any deficiency.

Subsection (e) allows a town to petition the Superior Court so as to determine the amount of deficiency, if any, and provides that the Superior Court "shall order that the said city or town be exempt from such . . . rule or regulation of any administrative agency until the commonwealth shall reimburse such city or town the amount of said deficiency or additional costs or shall repeal such exemption from local taxation."

impervious materials, maintaining a vertical separation between wastes and groundwater, maintaining horizontal distances from surface water, diverting drainage, or implementing a combination of these measures. Another method of controlling leachate is collecting the leachate or preventing its uncontrolled discharge from a landfill by retaining it in an impervious liner from which it is piped for treatment and disposal. An impervious liner is a barrier upon which a landfill is constructed that collects leachate and prevents it from percolating into groundwater. A liner may consist of natural impervious soils, synthetic membranes, or other naturally occurring or synthetic impermeable materials.

Throughout the 1970's, DEQE notified Norfolk of numerous violations of DEQE's regulations, promulgated pursuant to G. L. c. 111, § 150A, frequently citing the contamination by leachate of adjacent wetlands. Norfolk proposed to close its existing landfill and to expand into a new area. DEQE, in a letter to Norfolk on August 9, 1983, wrote that "[t]he existing operating area, which has reached its capacity, has a history of non-compliance with [DEQE's] existing regulations, and during heavy rainfall, discharges leachate into wetlands and the groundwater. Although the proposed base grade for the expansion area is 5 feet above the established ground water table, the soil that separates the bottom of the landfill from the groundwater is pervious." DEQE informed Norfolk that, because of "the potential for this facility to continue to generate leachate and contaminate the ground water, [DEQE] will require the Town of Norfolk to install an impervious liner at the base of the proposed expansion area to collect the leachate." In April, 1984, DEQE approved the plan to expand the landfill with an impervious liner. In that year, Norfolk voted to construct the landfill in accordance with DEQE's requirements, and began to expand the landfill. Norfolk subsequently asked DLM to rule that G. L. c. 29, § 27 (c), applied to the liner requirement, and to determine the amount of any deficiency. DLM determined that the liner requirement came within the statute, and

found the cost for the first year of construction to have been $144,027.50.

The judge determined that DEQE's requirement that Norfolk install an impervious liner was a "rule or regulation" under G. L. c. 29, § 27C.[8] The judge also decided that the liner requirement took effect after January 1, 1981. With respect to DEQE's argument that, if Norfolk had submitted its plans promptly in 1977-1979, the liner requirement would have been imposed before 1981, the judge stated: "I could not find that this would have happened beyond conjecture."

The judge concluded that Norfolk was exempt from the liner requirement under G. L. c. 29, § 27C, and adopted the DLM's finding that the deficiency was $144,027.50. The judge ruled that, "[s]ince the Commonwealth has not appropriated the said sums to reimburse the said Towns, they shall be exempt from the respective orders of DEQE relative to installing the liners until such time as such reimbursements are made." The judge granted the motions for summary judgment by the towns and denied DEQE's cross-motions for summary judgment. The judge later denied DEQE's motion for reconsideration. We granted DEQE's application for direct appellate review.

3. *Analysis.* DEQE argues that G. L. c. 29, § 27C, does not exempt municipalities from laws or regulations of general applicability governing activities engaged in by private businesses, when the municipality voluntarily engages in such activities.[9] We agree.

---

[8]While DEQE had, in 1983, proposed regulations requiring the installation of an impervious liner, it had never formally promulgated these regulations. The judge, considering DEQE's treatment of Norfolk, Hull, and Boxford, determined that the liner requirement was a "rule or regulation" within the meaning of G. L. c. 29, § 27C. Because of our resolution of this case, we need not address this issue.

[9]Norfolk argues that this issue, because not timely raised below, is not properly before this court. The judge, in his memorandum on the motion for reconsideration, stated that the issue was not timely raised. However, we think it appropriate to exercise our discretion to address the issue. This issue is one of great public importance, *Mullins* v. *Pine Manor College*, 389 Mass. 47, 63 (1983), bearing on the effective enforcement of environ-

Proposition 2½ exempts cities and towns from a "rule or regulation . . . which shall result in the *imposition* of additional costs" (emphasis supplied). G. L. c. 29, § 27C (*c*). The word "imposition" connotes compulsion and involuntariness. In our ·view, the section at issue applies to regulatory obligations in which the municipality has no choice but to comply and to pay the costs. It is from these mandatory obligations which Proposition 2½ grants relief.

A municipality is not required to operate a landfill under State law. See *Baumgardner* v. *Boston*, 304 Mass. 100, 107 (1939); G. L. c. 40, §§ 4, 4A, and 44C (1988 ed.). A majority of· municipalities use privately owned and operated commercial landfills. By operating a landfill, Norfolk has voluntarily chosen to participate in a heavily regulated industry, and is subject to the same conditions and costs as are accepted by a private party engaged in the same activity.

DEQE set forth conditions Norfolk had to meet before it could expand its landfill. DEQE had the authority to deny approval of the expanded landfill altogether. Instead, DEQE essentially gave Norfolk the choice of either installing the impervious liner and fulfilling other conditions necessary to preserve the public health, or refraining from expanding and operating its landfill.

The *Lexington* cases demonstrate that the creation of "tough choices" will not be deemed mandatory obligations under Proposition 2½. In *Lexington* v. *Commissioner of*

---

mental regulations in over 100 municipalities in the Commonwealth. "[T]his matter has been fully argued and presents an issue of public interest which is likely to arise again." *Globe Newspaper Co.* v. *Chief Medical Examiner*, 404 Mass. 132, 134 (1989). In addition, Norfolk cannot be said to have been prejudiced by the DEQE's pursuit of the issue on appeal. See *Albert* v. *Municipal Court of the City of Boston*, 388 Mass. 491, 494 (1983). DEQE alluded to the voluntariness line of reasoning in its memorandum supporting its cross-motion for summary judgment. It also raised the issue on the motion for reconsideration, to which Norfolk had and took the opportunity to respond. In addition, the judge, in his memorandum on the motion for reconsideration, while ultimately rejecting the motion, dealt with the voluntariness issue at some length. Furthermore, the issue has been fully briefed and argued before this court, and Norfolk, at oral argument, did not press its claim that the issue was not properly before this court.

*Educ.*, 393 Mass. 693 (1985) (*Lexington I*), we held that a statute obligating municipalities to provide transportation for private school pupils at a distance further than previously required was ineffective because funding was not provided in the same session for the direct obligation imposed on cities and towns. The Legislature, in response to our decision in *Lexington I*, conditioned the reimbursement of pre-1981 transportation costs on the acceptance by the municipalities of the busing statute at issue in *Lexington I*. In *School Comm. of Lexington v. Commissioner of Educ.*, 397 Mass. 593, 596 (1986) (*Lexington II*), we determined that this legislative scheme did not trigger Proposition 2½'s exemption provisions, despite the fact that the resulting cost would be over $200,000 to Lexington and over $500,000 to Newton, another plaintiff in the case. We stated: "The Legislature has the power to pursue a scheme which creates such hard choices. . . . There is . . . nothing to prevent the Legislature from forcing the acceptance of c. 663 upon reluctant cities and towns by providing benefits it has no obligation to provide only to those cities and towns which accept the statute." *Lexington II, supra* at 596-597. In this case, as in *Lexington II*, the municipality is faced with costs resulting from its voluntary action. These costs are not meant to be viewed as mandatory under the provisions of Proposition 2½.

We do not think that the differences in language between subsection (*a*) and subsection (*c*) of G. L. c. 29, § 27C, compel a contrary result. Subsection (*a*) deals with laws "imposing any direct service or cost obligation upon any city." Subsection (*c*) applies to rules and regulations "which shall result in the imposition of additional costs upon any city." Norfolk would have us read subsection (*c*) to include indirect costs which result from agency regulation, such as those which are incurred as a result of the installation of an impervious liner. Such an interpretation would widen the scope of Proposition 2½ beyond that which was intended. Under Norfolk's logic, even if the town were to contract its landfill operation out to a commercial enterprise, DEQE regulation of these enterprises resulting in indirect costs to Norfolk would

also be exempt under subsection (c).[10] In our view, such a sweeping evisceration of landfill regulation was not contemplated by the enactment of Proposition 2½.[11] "All the statutes must be construed, where capable, so as to constitute a harmonious whole consistent with the legislative purpose . . . ." *Labor Relations Comm'n* v. *Selectmen of Dracut*, 374 Mass. 619, 624 (1978), quoting *Chief of Police of Dracut* v. *Dracut*, 357 Mass. 492, 499 (1970). We do not think that Proposition 2½ can be construed to exempt municipalities from compliance with generally applicable environmental regulations which result in indirect costs to those municipalities engaging in voluntary activity. See G. L. c. 111, § 150A.

The judgment of the Superior Court is reversed. The case is remanded for entry of judgment on the DEQE's cross-motions for summary judgment.

*So ordered.*

---

[10]According to the affidavit of an environmental planner submitted by DEQE, "[t]here are approximately 195 active sanitary landfills in the Commonwealth. Of the Commonwealth's 351 cities and towns, 168 dispose of their waste in municipally operated landfills. The remainder are commercially owned and operated." Even if Proposition 2½ were read to exempt only municipal landfills from environmental regulation, the result could wreak havoc on the environment.

[11]We differ with the Appeals Court's dictum that "the significant differences in wording between the two subsections suggest[ ] . . . that subsection (c) was intended to have a broader application than subsection (a)." *Lynn* v. *Rate Setting Comm'n*, 21 Mass. App. Ct. 576, 581 n.6 (1986). We note that, immediately after the above statement, the Appeals Court added, "For purposes of determining what services the Commonwealth must pay for, however, we can imagine no logical justification for treating a statute differently from an administrative regulation." *Id.*