CITY OF CAMBRIDGE & others[1] vs. ATTORNEY GENERAL.

Suffolk. February 5, 1991. - May 16, 1991.

Present: LIACOS, C.J., NOLAN, LYNCH, & O'CONNOR, JJ.

*General Court. Municipal Corporations*, Municipal finance, Group insurance, Home rule, Collective bargaining. *Insurance*, Group. *Constitutional Law*, Municipalities.

Discussion of the history and background of art. 115 of the Amendments to the Massachusetts Constitution. [168-171]

Six statutes mandating the inclusion of certain health benefits in all individual and group health insurance plans did not violate art. 115 of the Amendments to the Massachusetts Constitution and were applicable to municipalities that purchased group health insurance plans for their employees, where the purpose of the statutes was to address matters of general concern, applicable statewide, and where art. 115 was not intended to exempt municipalities from laws of general applicability. [171-172]

Certain benefits mandated by statutes of general applicability to be included in health insurance contracts were not subject to collective bargaining by municipal employees under the terms of G. L. c. 150E, § 7. [172-173]

CIVIL ACTION commenced in the Superior Court Department on December 20, 1988.

The case was reported to the Appeals Court by *J. Owen Todd*, J., on a statement of agreed facts. The Supreme Judicial Court granted a request for direct review.

*Philip Collins* (*Michael D. Baseman*, Assistant City Solicitor, with him) for the city of Cambridge & others.

*Edward J. Dailey* for Blue Cross and Blue Shield of Massachusetts, Inc.

---

[1] Town of Arlington, town of Easton, town of Framingham, town of Needham, city of Newton, and Blue Cross and Blue Shield of Massachusetts, Inc.

*Alice Daniel*, Deputy Attorney General (*Virginia A. Hoefling*, Assistant Attorney General, with her) for the defendant.

*Leonard Kopelman*, for Massachusetts Municipal Association, amicus curiae, submitted a brief.

*Lila Heideman & Susan L. Crockin*, for Resolve, Inc., amicus curiae, submitted a brief.

LYNCH, J. At issue in this declaratory judgment action is whether six statutes enacted by the Legislature in 1987 and 1988, mandating the inclusion of certain benefits in all individual and group health insurance plans sold in Massachusetts, violated art. 115 of the Amendments to the Massachusetts Constitution.[2] That article provides that "[n]o law imposing additional costs upon two or more cities or towns by the regulation of the compensation, hours, status, conditions or benefits of municipal employment shall be effective in any city or town" unless the city or town accepts the law, the Legislature provides for assumption by the Commonwealth of the additional costs, or the Legislature enacts the law by a two-thirds vote of each house.

The plaintiffs are cities and towns (municipalities) that purchase group health insurance plans for their employees pursuant to G. L. c. 32B (1988 ed.), and Blue Cross and Blue Shield of Massachusetts, Inc. (Blue Cross/Blue Shield), from whom they purchase the plans. Pursuant to G. L. c. 231A (1988 ed.), the plaintiffs sought a declaration that art. 115 permits the towns to exclude the mandated benefits from their contracts with Blue Cross/Blue Shield.[3] The Attorney General asserted counterclaims against Blue Cross/

---

[2]The Attorney General does not claim that the municipalities may not challenge the constitutionality of the statutes and we do not therefore reach the issue. See *LaGrant* v. *Boston Hous. Auth.*, 403 Mass. 328, 330 (1988); *Trustees of Worcester State Hosp.* v. *The Governor*, 395 Mass. 377, 380 (1985); *Spence* v. *Boston Edison Co.*, 390 Mass. 604, 611 (1983).

[3]The towns also sought an order enjoining the Attorney General from enforcing the statutes against them, and requiring the Commonwealth to reimburse them for costs incurred to date "by reason of the unconstitutional application of the mandated health care benefit statutes."

Blue Shield for enforcement of the challenged statutes. The parties filed a statement of agreed facts and a joint motion to report the case, without decision, to the Appeals Court. The trial judge granted the motion. Subsequently, we granted the plaintiffs' application for direct appellate review.

The six challenged statutes mandate the following benefits: PAP smears (screening for cervical cancer) and mammography (screening for breast cancer), St. 1987, c. 363; preventive and primary care services for children, St. 1988, c. 23, §§ 48, 52, and 60; lead poison screening for children, St. 1987, c. 773; nonprescription enteral formulas for Chrohn's disease and ulcerative colitis, St. 1987, c. 683; diagnosis and treatment of infertility, St. 1987, c. 394; and chiropractic services, St. 1987, c. 711.

With the exception of St. 1988, c. 23 (preventive and primary care services for children), which passed by a simple majority in both houses of the Legislature, the challenged statutes were enacted by voice vote in each house, and there was no record made of the number of members of either house present and voting either for or against the statutes. The Legislature did not provide for assumption by the Commonwealth of the additional costs to the towns that may result from application of the statutes. The towns have not accepted these statutes, either by vote or appropriation.

The current group health insurance contract between the city of Cambridge and Blue Cross/Blue Shield includes all of the benefits mandated by the challenged statutes except those for chiropractic services and infertility treatment.[4] The current group health insurance contracts between the other municipalities and Blue Cross/Blue Shield cover all six of the benefits mandated by the challenged statutes.

Pursuant to the Home Rule Amendment, art. 89, the Legislature was authorized to make the application of certain laws to a particular municipality dependent on approval by

---

[4]Cambridge entered into an agreement with Blue Cross/Blue Shield purporting to indemnify Blue Cross/Blue Shield from any liability resulting from excluding those two benefits from coverage.

the voters of that municipality. General Laws c. 32B, requiring municipalities to purchase group health insurance plans for their employees and to pay at least fifty percent of the premiums for the plans, was such a "local option" statute. Like the statute establishing retirement systems and pensions for municipal employees, G. L. c. 32B is irrevocable once accepted. G. L. c. 32B, § 10. G. L. c. 4, § 4B (c) (1988 ed.). All of the municipal plaintiffs in this case accepted G. L. c. 32B by local vote.

Since insurance companies (in this case, Blue Cross/Blue Shield) will seek to raise their premiums[5] to the extent necessary to cover the cost of the mandated benefits, the challenged statutes will result in additional costs to the municipalities who contribute a portion of the premiums for their employees' health insurance. The plaintiffs argue that, because the municipalities are obligated under G. L. c. 32B to purchase group health insurance, and the challenged statutes require every group health plan sold to cover the mandated benefits, the municipalities have no choice but to provide such benefits for their employees. They claim, therefore, that although the statutes regulate insurance plans, in effect they also constitute "regulation[s]" of the benefits of municipal employment "imposing additional costs" upon the municipalities. Finally, since the costs were not assumed by the Commonwealth, and the record does not demonstrate that the statutes were passed by a two-thirds vote of the Legislature[6] or accepted by the municipalities, the plaintiffs claim their application to municipal group health insurance plans violates art. 115. We disagree.

We begin by briefly reviewing the background of art. 115. The collective bargaining law passed in 1973, and codified as G. L. c. 150E (1988 ed.), which broadened the scope of

---

[5]Subject to the approval of the Commissioner of Insurance for group and individual health plans sold by nonprofit insurers, and for individual health plans sold by commercial insurers. See G. L. c. 176A, § 6; G. L. c. 176B, § 4; and G. L. c. 175, § 108 (1988 ed.).

[6]No record was made of the exact votes for the challenged statutes, except for St. 1988, c. 23, which was passed by a simple majority.

terms negotiable in collective bargaining between municipal employers and employees, also originally provided for binding interest arbitration of labor disputes between municipalities and police officer or fire fighter groups. St. 1973, c. 1078, § 4. In *Arlington* v. *Board of Conciliation and Arbitration,* 370 Mass. 769 (1976), the town of Arlington challenged arbitration awards made pursuant to that provision which established the year's wages, vacation pay, sick leave, and other conditions of employment for Arlington's police and fire fighters. This court ruled that the binding arbitration procedure was not violative of § 8 of the Home Rule Amendment, because "the General Court has the power to legislate in the area of municipal wages and benefits."[7] *Arlington, supra* at 774. In response to the town's public policy arguments pointing out the undesirability of binding arbitration, this court stated that "[p]articular political, social, and economic beliefs, no matter how fervently espoused, are not translated into constitutional imperatives *without reference to specific constitutional provisions . . .* We see no constitutional impediment to the Legislature's structuring municipal labor relations in the manner provided in the act." (Emphasis added.) *Id.* at 780.

Article 115, which originated in the 1977 joint legislative session soon after the decision in *Arlington,* provided the "specific constitutional provision" required by *Arlington* to overcome the binding arbitration law. The argument for the amendment (Question 5 on the ballot) that appeared in the Voter Information Supplement issued by the State Secretary said, in part, that "if a mandate *concerning municipal employee salaries or benefits* is passed without full state funding or without a ⅔ vote of each house, then voters and taxpayers within each city or town would have the right to

---

[7]The Home Rule Amendment to the Massachusetts Constitution, art. 89, returned to local government some measure of power over local affairs. Section 8 of art. 89 provided that the Legislature "shall have the power to act in relation to cities and towns, but only by general laws which apply alike to . . . a class of not fewer than two, and by special laws enacted [by certain procedures]."

decide whether or not they want to spend the additional money in their community to fund the new law" (emphasis added).

Article 115 limits the Legislature's power to regulate the terms. of municipal employment. Like the Home Rule Amendment, however, it did not limit the Legislature's ability to enact laws for the general welfare. In considering the meaning of § 8 of the Home Rule Amendment, prior to the addition of art. 115, this court stated, "We do not interpret the words 'to act in relation to cities and towns' as precluding the Legislature from acting on matters of State, regional, or general concern, even though such action may have special effect upon one or more individual cities or towns. If the predominant purposes of a bill are to achieve State, regional, or general objectives, we think that, . . . the Legislature possesses legislative power, unaffected by the restrictions in art. 89, § 8." *Opinion of the Justices*, 356 Mass. 775, 787-788 (1969).

Article 115 was adopted by popular vote the same day as G. L. c. 29, § 27C (1988 ed.), the "local mandate" provision of Proposition 2½.[8] Subsection (c) of the "local mandate" provision was similar to art. 115 in that it barred the effectiveness of any rule or regulation "which shall result in the imposition of additional costs upon any city or town" without the assumption by the Commonwealth of those costs. G. L. c. 29, § 27C (c).[9] We have held that reading subsection (c) "to include indirect costs which result from agency regulation . . . would widen the scope of Proposition 2½ beyond

[8]The referenda enacted on that day were an attempt to control the rise of local costs and local taxes. The "local mandate" provision was a response to the enactment by the Legislature, in the 1970s, of a number of statutes which imposed substantial costs on municipalities without the assumption of those costs by the Commonwealth. See, for example, St. 1972, c. 766, the so-called Special Education Law.

[9]Subsection (a) of G. L. c. 29, § 27C, provides that "[a]ny law . . . imposing any direct service or cost obligation upon a city or town" shall be effective only if it is accepted by such city or town or if the Legislature provides by appropriation for the assumption by the Commonwealth of such cost.

that which was intended." *Norfolk* v. *Department of Envtl. Quality Eng'g,* 407 Mass. 233, 240 (1990). At issue in *Norfolk* was an environmental regulation requiring installation of an impervious liner to protect groundwater from contamination, prior to expansion of any landfill. We held that Proposition 2½ does not exempt municipalities from generally applicable laws or regulations, governing activities engaged in by private businesses, which result in indirect costs to those municipalities voluntarily engaging in such activity. *Id.* at 238, 241. Since the town of Norfolk chose to operate a landfill and to expand it, the costs resulting from the environmental regulation were not "imposed" according to the meaning of G. L. c. 29, § 27C (*c*). *Id.* at 239.

Mandated benefits laws are designed to ensure the availability of certain benefits considered necessary for the public welfare and which otherwise, because of a distorted insurance market, might not be offered or might have a prohibitively high cost.[10] See *Metropolitan Life Ins. Co.* v. *Massachusetts,* 471 U.S. 724, 731 (1985) (discussing mandated benefits for treatment of mental illness). We do not think these generally applicable insurance regulations constitute the type of "regulation . . . of municipal employment" contemplated by art. 115. That article was not intended to exempt a municipality from laws of general applicability, governing private businesses and individuals as well as public purchasers of health insurance, which result in indirect costs to those municipalities voluntarily providing such insurance. Cf. *Norfolk* v. *Department of Envtl. Quality Eng'g, supra.*

The municipalities claim their provision of group health insurance is not "voluntary." It is true that, once having ac-

---

[10]In the case of preventive services, which account for at least three of the six challenged statutes, although such services may reduce total health care costs in the long run, an employer looking only at short term costs might elect not to provide coverage for such services, since the expense of treatment for the condition to be prevented may not be incurred for many years. In addition, the cost of coverage for some conditions, such as infertility, may be prohibitively high because "good-risk" individuals do not purchase coverage, thus driving up the price of coverage for those who would otherwise purchase it.

cepted the obligation to provide health care benefits to its employees according to the provisions of c. 32B, a town cannot later "opt out" of that obligation the way the town of Norfolk could presumably cease operating its landfill. However, the fact that G. L. c. 32B is irrevocable once accepted does not affect the voluntariness of the acceptance.[11] Moreover, in the same election which adopted art. 115 and Proposition 2½, the voters also adopted a statute which, while allowing a municipality to revoke its acceptance of certain local option statutes, specifically continued the prohibition against revocation of acceptance of G. L. c. 32B. See G. L. c. 4, § 4B.[12] Compare *Everett Retirement Bd.* v. *Assessors of Everett*, 19 Mass. App. Ct. 305, 308 (1985) (the insulation of municipal retirement systems from Proposition 2½ is confirmed by G. L. c. 4, § 4B, which permits municipalities to revoke acceptance of a State law so as to extricate themselves from the accompanying financial obligations, but expressly excludes G. L. c. 32, governing municipal retirement systems, from that revocation option). It was apparent, when the municipalities accepted the obligation to purchase group insurance plans for their employees, that such plans were and would be subject to generally applicable insurance regulations which might cause premiums to rise. If the municipalities (or Blue Cross/Blue Shield) do not agree with the Legislature that the public interest is served by mandating certain benefits, such as coverage for chiropractic services or infertility treatment, then the Legislature is the proper forum for attempting to avoid those benefits.

One final point: the plaintiffs charge that application of the mandated benefits statutes to municipal employees' group health insurance contracts violates G. L. c. 150E, under which the "wages, hours, standards or productivity and per-

---

[11]The fact that, according to the plaintiffs, G. L. c. 32B was "universal[ly] accept[ed]," and the number of years ago that it was accepted also have no bearing on the voluntariness of the acceptance.

[12]A mandated benefits statute covering some treatment for mental illness had been enacted by the Legislature several years earlier, by St. 1973, c. 1174, § 2, and was effective in 1976.

formance, and any other terms and conditions of employment" of municipal employees are to be determined by collective bargaining with municipal employers. See *School Comm. of Medford* v. *Labor Relations Comm'n*, 8 Mass. App. Ct. 139, 140 (1979), *S.C.*, 380 Mass. 932 (1980) (health insurance benefits are within the category of "conditions of employment" subject to collective bargaining under G. L. c. 150E, § 6). The statutes listed by G. L. c. 150E, § 7, as being superseded by collective bargaining agreements deal exclusively with specific terms or conditions of public employment. None of them are generally applicable statutes such as the ones at issue here. Municipal employers and employees may not negotiate to avoid complying with laws of general applicability, including insurance regulations. *Commonwealth* v. *Labor Relations Comm'n*, 404 Mass. 124, 126 (1989) (statutes not specifically enumerated in G. L. c. 150E, § 7 [*d*], will prevail over contrary terms in collective bargaining agreements).[13]

We therefore declare that the provision of art. 115 of the Massachusetts Declaration of Rights does not render ineffective the statutes challenged in this action.

---

[13]Contrary to the defendant's argument, the holding of this court in *Attorney Gen.* v. *Travelers Ins. Co.*, 385 Mass. 598 (1982), and of the United States Supreme Court in *Metropolitan Life Ins. Co.* v. *Massachusetts*, 471 U.S. 724 (1985), that mandated benefits do not conflict with the Employee Retirement Income Security Act or the National Labor Relations Act, is not relevant to the issues in this case.