# City of Worcester & others[1] *vs.* The Governor & others.[2]

Worcester. October 5, 1993. - January 10, 1994.

Present: Liacos, C.J., Abrams, Nolan, & O'Connor, JJ.

*Taxation*, Limitation. *Proposition 2½. Statute*, Construction, Appropriation of money. *School and School Committee*, Special education, Tuition, Testing. *Constitutional Law*, Appropriation of money. *Commonwealth*, Financial matters. *Governor*.

Certain statutes, rules and regulations enacted or promulgated to be effective on or after January 1, 1981, that were challenged by a city, its school committee, and ten taxpayers as "unfunded local mandates" within the meaning of G. L. c. 29, § 27C, were not demonstrated to be "new law[s] changing existing law[s]" imposing new direct service or cost obligations on the city so as to entitle the plaintiffs to any relief under the provisions of G. L. c. 29, § 27C (*e*). [754-761]

This court stated its view that where a statute, rule or regulation constitutes an "unfunded local mandate" as defined in G. L. c. 29, § 27C, the correct remedy under that statute is not an order of reimbursement by the Commonwealth to the municipality but rather an order exempting the municipality from the mandate. [761-762]

A challenge by a municipality to a certain statute and regulations promulgated thereunder as being an "unfunded local mandate" within the meaning of G. L. c. 29, § 27C, was rendered moot by the repeal of the statute inasmuch as the only available remedy under G. L. c. 29, § 27C, was an order exempting the municipality from the statute's mandate. [761]

---

[1]The school committee of the city of Worcester; John F. Doherty, John Durkin, Kathleen Early, Helen A. Friel, Rose-Marie McClusky, Stephen E. Mills, S. Gary Rosen, John Simoncini, Edmund J. Tierney, and James Underwood, in their individual capacities as ten taxpayers of the city of Worcester.

[2]The Department of Education, Acting Commissioner of Education, Treasurer and Receiver General, the Rate Setting Commission, Bureau of Special Education Appeals, the Board of Education, the Board of Regents of Higher Education, and the Architectural Access Board.

CIVIL ACTION commenced in the Superior Court Department on March 15, 1989.

The case was reported to the Appeals Court by *Robert H. Bohn, Jr.*, J., on a statement of agreed facts. The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Michelle A. Allaire* (*Richard W. Murphy* with her) for the plaintiffs.

*Douglas H. Wilkins*, Assistant Attorney General, for the defendants.

O'CONNOR, J. In this case we consider whether various statutes and administrative rules and regulations dealing with public education are "unfunded local mandates" within the meaning of G. L. c. 29, § 27C (1992 ed.). That statute, known as the "local mandates" law, is a portion of Proposition 2½, which is a tax limitation measure that the voters adopted as c. 580 of the Acts of 1980 under the initiative process of the Constitution of the Commonwealth. *Massachusetts Teachers Ass'n* v. *Secretary of the Commonwealth*, 384 Mass. 209, 212, 216 (1981). The relevant provisions of G. L. c. 29, § 27C, are as follows: "Notwithstanding any provision of any special or general law to the contrary: (*a*) Any law taking effect on or after January first, nineteen hundred and eighty-one imposing any direct service or cost obligation upon any city or town shall be effective in any city or town only if such law is accepted by vote or by the appropriation of money for such purposes, in the case of a city by the city council in accordance with its charter, and in the case of a town by a town meeting, unless the general court, at the same session in which such law is enacted, provides, by general law and by appropriation, for the assumption by the commonwealth of such cost, exclusive of incidental local administration expenses and unless the general court provides by appropriation in each successive year for such assumption. . . . (*c*) Any administrative rule or regulation taking effect on or after January first, nineteen hundred and eighty-one which shall result in the imposition of additional costs upon any city or town shall not be effective until the general

court has provided by general law and by appropriation for the assumption by the commonwealth of such cost, exclusive of incidental local administration expenses, and unless the general court provides by appropriation in each successive year for such assumption. (*d*) Any city or town, any committee of the general court, and either house of the general court by a majority vote of its members, may submit written notice to the division of local mandates, established under section six of chapter eleven of the general laws, requesting that the division determine whether the costs imposed by the commonwealth by any law, rule or regulation subject to the provisions of this section have been paid in full by the commonwealth in the preceding year and, if not, the amount of any deficiency in such payments. The division shall make public its determination within sixty days after such notice. (*e*) Any city or town, or any ten taxable inhabitants of any city or town may in a class action suit petition the superior court alleging that under the provisions of subsections (*a*), (*b*) and (*c*) of this section with respect to a general or special law or rule or regulation of any administrative agency of the commonwealth under which any city or town is required to expend funds in anticipation of reimbursement by the commonwealth, the amount necessary for such reimbursement has not been included in the general or any special appropriation bill for any year. . . . The determination of the amount of deficiency provided by the division of local mandates under subsection (*d*) of this section shall be prima facie evidence of the amount necessary. The superior court shall determine the amount of the deficiency, if any, and shall order that the said city or town be exempt from such general or special law, or rule or regulation of any administrative agency until the commonwealth shall reimburse such city or town the amount of said deficiency or additional costs . . . ."

Pursuant to § 27C (*d*), in 1990 and 1991 Worcester requested the division of local mandates of the State Auditor's office (DLM), established under G. L. c. 11, § 6 (1992 ed.), to determine whether some of the education-related statutes, rules, and regulations involved in this appeal were unfunded

local mandates. With respect to those statutes, rules, and regulations that DLM would identify as unfunded local mandates, Worcester also requested DLM to determine the amounts of deficiencies in payments to Worcester. DLM determined that five, but not all, of the statutes, rules, and regulations it examined constituted unfunded local mandates and set the total deficiency in payments at $985,025.

Worcester and the other plaintiffs then filed a complaint in the Superior Court pursuant to § 27C (*e*) requesting the court to declare that all the statutes, rules, and regulations examined by DLM, plus others not examined by that office, constitute unfunded local mandates. The plaintiffs also sought an order requiring reimbursement for Worcester's costs incurred in complying with those alleged unfunded mandates. A judge reserved and reported the case to the Appeals Court and we transferred the case here on our own initiative. The questions presented are questions of law for this court to resolve. We conclude that none of the statutes, rules, or regulations involved herein constitutes an unfunded local mandate. For that reason, Worcester is not entitled to reimbursement. However, because the issue has been thoroughly argued and has the potential to arise again, we go beyond the necessities of this case to state. that, even as to statutes, rules, and regulations that do constitute unfunded local mandates, municipalities that have incurred costs of compliance are not entitled to reimbursement, but are entitled only to a declaration that those "mandates" are ineffective.

We discuss below each statute, rule, and regulation challenged by the plaintiffs, all of which were enacted or promulgated to be effective on or after January 1, 1981. As to each, we inquire whether it was "a new law changing existing law," *Lexington* v. *Commissioner of Educ.*, 393 Mass. 693, 697 (1985), quoting *Cambridge* v. *Boston*, 130 Mass. 357, 360 (1881), and resulted in Worcester's having a direct service or cost obligation which it did not voluntarily assume and which was imposed on it by the Commonwealth. See *Norfolk* v. *Department of Envtl. Quality Eng'g*, 407 Mass. 233, 239 (1990); *School Comm. of Lexington* v. *Commis-*

*sioner of Educ.*, 397 Mass. 593, 596-597 (1986). In addition, in some instances we must consider whether a newly imposed cost obligation relates only to an incidental local administrative expense and therefore, under § 27C (*a*) and (*c*), need not be funded by the Commonwealth.

Before 1981 and until 1986, the Department of Education's regulation, 603 Code Mass. Regs. § 28:103.0, defined a "[c]hild in need of special education" as "a child who has been determined by the Administrator of Special Education[1] to need special education in accordance with the provisions of [§ 28:322.2], or has been referred to a program described in [§ 28:502.7] (home or hospital program). Such determination or referral must be based upon a finding that a child, because of temporary or more permanent adjustment difficulties or attributes arising from intellectual, sensory, emotional or physical factors, cerebral dysfunctions, perceptual factors, or other specific learning impairments, or any combination thereof, is unable to progress effectively in a regular education program and requires special education. Children of ages three and four shall qualify as children in need of special education if they have a substantial disability in one or more of the areas listed above." In 1986, the department amended that definition by adding a new final sentence: "Substantial disability for children three and four years of age is defined as any condition which would interfere with that child's educational growth and development and deter that child's ability to progress effectively in a regular elementary school classroom when he/she attains school age."

The parties have stipulated that "[s]ince the change in regulation, the City of Worcester and the Worcester School Department have served three and four-year-olds whom they would not have served prior to the amendment to the State regulation under Worcester's interpretation of the prior law. The children at issue have a disability or condition that Worcester believes would interfere with the child's educational ability to progress effectively in a regular classroom when the child reached school age, but Worcester did not consider their disabilities to rise to the level of 'substantial'

under its view of pre-1986 law. These children have sight, hearing or speech disabilities." Under our interpretation of 603 Code Mass. Regs. § 28:103.0, before its amendment in 1986, impairment of a three or four year old child's sight, hearing, or speech that would interfere with the child's ability to progress effectively in a regular classroom when the child reached school age was a "substantial disability," and the child was entitled to special education. Indeed, as the defendants argue, "it would be hard to think of any appropriate definition of 'substantial disability' other than the one contained in the 1986 [amendment to the] regulation." We conclude that the amendment was a clarification of existing law rather than a new law changing existing law resulting in the imposition of new direct service or cost, and that therefore it was not an unfunded local mandate.

Before 1981 and until 1986, 603 Code Mass. Regs. § 28:319.3(a) required that a child's special education evaluation include "[a] comprehensive health assessment by a physician which identifies medical problems that may affect the child's education, such as physical constraints, chronic illness, neurological and sensory deficits, and developmental dysfunction; in addition to any procedures required by the regulations of the Department of Public Health." In 1986, that regulation was amended by adding the following final sentence: "The health assessment shall be reviewed by the school nurse and any additional relevant health information shall be added from the child's school health records." Before and since 1981, Federal law has required that municipalities' special education evaluations and placement decisions be based on information about the child's physical condition, among other things, and that that information be documented and carefully considered by persons who are able to appreciate it. Before 1981, 34 C.F.R. § 104.35(c) provided, and continues to provide, as follows: "*Placement procedures.* In interpreting evaluation data and in making placement decisions, a recipient shall (1) draw upon information from a variety of sources, including aptitude and achievement tests, teacher recommendations, physical condi-

tion, social or cultural background, and adaptive behavior, (2) establish procedures to ensure that information obtained from all such sources is documented and carefully considered, (3) ensure that the placement decisions made by a group of persons, including persons knowledgeable about the child, the meaning of the evaluation data, and the placement options, and (4) ensure that the placement decision is made in conformity with [34 C.F.R.] § 104.34." In order to satisfy the requirements of that regulation, it is clear that someone with expertise would have to review the physician's medical assessment and other readily available evidence of the child's physical condition, such as school health records, and interpret that material for those charged with making a placement decision. The amendment to 603 Code Mass. Regs. § 28:319.3 (a) in 1986 only identified the individual with appropriate expertise. It did not, in our view, change the law and thereby impose new direct service or cost obligations on municipalities. Therefore, it did not constitute an unfunded local mandate.

Since before 1981, school principals have been required by 603 Code Mass. Regs. § 28:315 to determine whether a child should be referred for special education evaluation when certain conditions set forth in the regulation exist. Before 1986, if the principal decided that such evaluation was unnecessary, no further action was required. However, if the principal referred the child for evaluation, the parental notice procedures of 603 Code Mass. Regs. §§ 28:311 et seq. were triggered. In 1986, 603 Code Mass. Regs. § 28:315.1 was amended to provide that "[t]he principal, or his/her designee, of the school attended by such child shall determine whether a referral should be made under Chapter 766 if any of the . . . conditions [subsequently set forth in the regulation] exist and shall promptly and in writing[ ] notify the parents which condition exists, if a referral is being made, and of their right to make such a referral." Thus, for the first time, principals or their designees were required to notify the parents upon finding one or more of the conditions enumer-

ated in the regulations even though the principal decided not to refer the child for evaluation.

General Laws c. 29, § 27C (*a*) and (*c*), provide that a law or regulation imposing new obligations on a municipality is not effective unless the Commonwealth provides "by general law and by appropriation, for the assumption by the commonwealth of such cost, *exclusive of incidental local administration expenses*" (emphasis added). Although the statute does not define the term, "incidental local administration expenses," it is reasonable to conclude that they are relatively minor expenses related to the management of municipal services and that they are subordinate consequences of a municipality's fulfilment of primary obligations. We are satisfied that 603 Code Mass. Regs. § 28:315.1 relates solely to incidental local administration expenses. The primary obligation imposed by the regulation both before and after the amendment is to identify children in need of special education. Written parental notification is a subordinate administrative task and therefore need not be funded by the Commonwealth.

Title 603 Code Mass. Regs. § 28:501.12 also was amended in 1986. Before the amendment, the regulation required that each school committee submit to the department an annual program plan which includes "[t]he specific manner in which the school committee plans to address the gaps in available services and facilities which do not allow for a less restrictive prototype, in accordance with § 504.3(a)." The 1986 amendment added the requirement that the annual plan include "the manner in which [the school committees] plan to make all school buildings and areas of school buildings accessible to students with limited mobility." The parties agree that, before 1981, Federal and State law required school committees to study the access needs of their school buildings and to consider how those needs might be addressed. The 1986 amendment requiring the annual submission of school building access plans imposes only administrative expenses incidental (subordinate) to the primary obligation to provide school accessibility to students with lim-

ited mobility. Such expenses need not be funded by the Commonwealth in order to be mandatory.

The plaintiffs' next contention is that G. L. c. 76, § 7, as amended by St. 1983, c. 684, § 1, constitutes an unfunded local mandate under G. L. c. 29, § 27C (a). Before 1981 and until the 1983 amendment, the first sentence of G. L. c. 76, § 7, provided: "For the tuition in the public schools of any city, town, or regional school district of any school age child placed in foster care or group care elsewhere than in his home town by, or there kept under the control of, the department of social services, the commonwealth shall reimburse said city, town, or regional school district for the child's tuition each day the child is enrolled in a public elementary or secondary school." Statute 1983, c. 684, § 1, amended G. L. c. 76, § 7, by inserting the word "fully" in the first sentence so that sentence then provided (and continues to provide) that "[f]or the tuition in the public schools of any city, town, or regional school district of any school age child placed in foster care or group care elsewhere than in his home town by, or there kept under the control of, the department of social services, the commonwealth shall *fully* reimburse said city, town, or regional school district for the child's tuition each day the child is enrolled in a public elementary or secondary school" (emphasis added). The plaintiffs say that the Commonwealth failed fully to reimburse Worcester for the 1983-1984 and 1987-1988 school years and that therefore, pursuant to the local mandates law, the city is entitled to be reimbursed. We reject the plaintiffs' argument. The 1983 amendment was not substantive. It did not change pre-1981 law so as to impose obligations on Worcester that were not previously imposed. General Laws c. 76, § 7, as amended by St. 1983, c. 684, § 1, does not constitute an unfunded local mandate taking effect on or after January 1, 1981.

We turn to the plaintiffs' contention that statutory and regulatory changes since January, 1981, which have resulted in Worcester paying higher tuition for private day and resident special education programs for children residing in

Worcester, constitute unfunded local mandates. Worcester has been obliged since before 1981 to provide special education to its resident children that require it, and that obligation was met in some instances by Worcester providing a special program in its public schools and in other instances by Worcester's paying tuitions for private programs. Worcester's obligation to provide special education has not changed since January 1, 1981, but the tuitions it has paid have increased as permitted by regulatory changes. In our view, increased costs, pursuant to rate-setting regulatory changes, for services mandated before 1981 do not constitute unfunded local mandates within the contemplation of G. L. c. 29, § 27C. See *Lynn* v. *Rate Setting Comm'n*, 21 Mass. App. Ct. 576, 581-584 (1986).

In 1984, the Board of Regents of Higher Education (now replaced by the Higher Education Coordinating Council, see St. 1991, c. 142, § 7) published its minimum admission standards for public baccalaureate colleges and universities. The standards required that students entering public four-year colleges and universities in Massachusetts must have completed at least two years of a foreign language unless a waiver was obtained. This requirement had existed for the University of Massachusetts College of Arts and Sciences since before 1981 but was new for other Massachusetts public colleges and universities. The parties agree that many private colleges have had the same or more stringent foreign language requirements since before 1981. The plaintiffs argue that, as a practical matter, the admission standards imposed new obligations on Worcester's public high schools to expand foreign language course offerings for students preparing for college. The plaintiffs say that "[t]he reality is that Worcester cannot ignore the requirements of the admissions standards in formulating its curriculum because to do so would be to fail to fulfil[ ] its mandate under [G. L.] c. 71, § 1." "Regular education," as distinguished from "special education," is defined in G. L. c. 71B, § 1, as "the school program and pupil assignment which normally leads to college preparatory or technical education or to a career." The

Board of Regents did not have authority, nor did it purport, to impose a new requirement on high schools. Although Worcester's expansion of its foreign language offerings may have been an appropriate response to the new public college admission standards, the standards did not mandate that response. The admission standards do not constitute an unfunded local mandate. See *Norfolk* v. *Department of Envtl. Quality Eng'g*, 407 Mass. 233, 239 (1990) ("In our view, [G. L. c. 29, § 27C] applies to regulatory obligations in which the municipality has no choice but to comply and to pay the costs. It is from these mandatory obligations which Proposition 2½ grants relief").

The plaintiffs have argued that the Massachusetts testing program established by G. L. c. 15, § 50, added by St. 1985, c. 188, and regulations promulgated to implement that program constitute unfunded local mandates. General Laws c. 15, § 50, was repealed by the Education Reform Act, St. 1993, c. 71, § 10. Therefore, in the light of our conclusion discussed briefly below, that when an unfunded local mandate exists, a municipality's only available remedy under G. L. c. 29, § 27C, is a court order exempting the municipality from compliance, the plaintiffs' challenge to the testing program is moot.

With the exception of the last mentioned statute, G. L. c. 15, § 50, and related regulations, we have concluded that none of the statutes, rules, and regulations challenged by the plaintiffs constitutes an unfunded local mandate under G. L. c. 29, § 27C (*a*) and (*c*). For that reason alone, the plaintiffs are not entitled to the order of reimbursement which they seek. We think it appropriate, however, that we state our view that, even if we had concluded that one or more of the challenged statutes, rules, or regulations constituted an unfunded local mandate, the correct remedy would not be an order of reimbursement but rather an order exempting Worcester from the mandate. General Laws c. 29, § 27C (*a*) and (*c*), only provide that statutes, rules, and regulations that take effect after January 1, 1981, and that mandate additional direct costs, exclusive of local administration ex-

penses, shall be ineffective unless funded. The statute does not provide that reimbursement is required, but only that, in the absence of reimbursement, the "mandates" are not mandates. Consistent with subsections (*a*) and (*c*), subsection (*e*) provides: "The superior court shall determine the amount of the deficiency, if any, and shall order that the city or town shall be exempt from such general or special law, or rule or regulation . . . until the commonwealth shall reimburse such city or town the amount of said deficiency."

This case is remanded to the Superior Court for the entry of a judgment dismissing the Governor from the case, *Milton* v. *Commonwealth, ante* 471 (1993), and declaring that none of the challenged statutes, rules, and regulations constitute unfunded local mandates within the purview of G. L. c. 29, § 27C.

*So ordered.*